PER CURIAM.
This appeal is from a final order of the Circuit Court of Dade County, Florida, which determined that the ownership of certain U. S. Savings Bonds was vested in the estate of Leon Garvey, deceased, rather than in his former wife, the appellant.
The facts, generally, are that the decedent, Leon Garvey, married the appellant in Chicago on March IS, 1942. Both were represented by counsel during the divorce. On November 27, 1956, the final decree of divorce, entered in Illinois, approved and adopted a property settlement agreement executed between Garvey and the appellant. During the marriage, Garvey purchased thirty-nine Series E United States Savings Bonds which are the subject matter of the present suit and appeal. They are five (5) One Thousand ($1,000) Dollar Bonds issued in March, 1950, which were and are registered now as “LEON GARVEY or MRS. ANNE GARVEY.” The remaining thirty-four (34) bonds were and are registered now as follows: “LEON GARVEY, P.O.D. MRS. ANNE GARVEY.” (P.O.D. is the accepted abbreviation for “payable on death”).
After the divorce, Leon Garvey moved to Dade County where the bonds were found in his safety deposit box after his death. He had possession and control of the bonds at all times and his ex-wife, who had moved to California and remar *98 ried, made no claim or demand for the bonds or the proceeds thereof until the present law suit was filed by the executors of the estate of Leon Garvey to determine ownership of the bonds. Garvey’s will left his entire estate to his two brothers, Samuel and Bernard Garvey. No mention of his ex-wife was made in the will.
The trial judge found that the savings bonds were owned by Leon Garvey solely at the time of his death, that the bonds were the property of his estate, and that the executors were entitled to the proceeds thereof as assets of the Estate. The ex-wife has now appealed.
Both parties on appeal agree that the ownership of the bonds is a question of law and that there were no material factual issues to be resolved by the trial court.
The property settlement agreement between the parties, which was aproved in the final divorce decree, contained the following pertinent provisions:
* * * * * *
“WHEREAS, the parties hereto, without collusion or agreement to obtain a divorce, but solely for the purpose of adjusting and settling all claims for support, alimony and property rights, one with the other, have agreed upon a settlement of all of their respective financial and property rights, rights of dower, inheritance and support, and particularly such property rights and claims acquired by both of them during their marital life. (Emphasis added)
* * * sts * *
“The parties hereto mutually agree that any and all property (other than is herein set forth) acquired by the parties hereto during their marital existence has been segregated and divided between the parties hereto, and each of the parties hereto represents and admits that each of them has in his or her possession his or her rightful property." (Emphasis added)
* * * * * 5}<
“All the rights, claims and demands of every kind, nature and description, which each party has or may hereafter have, or claim to have against the other, including all liabilities now or at any time hereafter existing or accruing on account of support, maintenance, alimony, temporary or permanent, attorneys’ fees, dower, or rights in lieu thereof, incident to the marriage relationship existing between the parties hereto, are hereby forever discharged, extinguished, released and ended, and the parties hereto further agree that all matters and charges whatsoever and all manner of actions or causes of actions, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever, in law or in equity, which each party ever had, now has or which he or she, his or her heirs, exec-cutors, administrators or assigns, or any of them, hereafter can, shall or may have against the other (as the case may be) for or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the date hereof, shall be and the same are hereby forever released, discharged, barred, terminated and extinguished.”
* * * * *
The property settlement agreement, and the final decree of divorce made no specific mention of the bonds.
Treasury regulations provide for the transfer of ownership of U. S. Savings Bonds as follows:
******
“A divorce decree ratifying or confirming a property agreement between husband and wife or otherwise settling their respective interests in savings bonds will be recognized and will not be regarded as a proceeding giving effect to an attempted voluntary transfer for the purpose of this section.” 31 C.F.R. § 315.13 (c), currently under § 315.22(a).
Here, it appears that the property settlement agreement between the husband and *99 wife has been ratified and confirmed in their final divorce decree and that it was broad enough in scope to include and settle their respective interests in the U. S. Savings Bonds, above mentioned.
In Marshall v. Felker, 156 Fla. 476, 23 So.2d 555, 557, 161 A.L.R. 167 (1945), the Supreme Court of Florida said:
* * * * * *
“It is the general rule that every species of personal property of which the legal or equitable title can pass by delivery, actual or constructive, may be the subject of a valid gift, either inter vivos or causa mortis. 28 C.J., Gifts §§ 38, 39, 114; 38 C.J.S., Gifts, §§ 30, 31, 90; 24 Am.Jur., Gifts, § 66. The rule applies to ‘nonnegotiable’ or ‘non-transferrable’ postal savings certificates and savings bonds issued by the federal government so long as the federal statutes, rules and regulations under which they are issued contain no express prohibition against the transfer of such instruments by gift. In re Diskin’s Estate, 105 Pa.Super. 519, 161 A. 893; In re Vanicek’s Estate, 145 Neb. 531, 17 N.W.2d 477; Blair v. Kirchner, 319 Ill.App.348, 49 N.E.2d 292; Dietzen v. American Trust & Banking Co., 175 Tenn. 49, 131 S.W.2d 69.

* * * And though section 315.51 of the Regulations governing the issuance of United States savings bonds provides that no judicial proceedings will be recognized ‘if they would give effect to an attempted voluntary transfer inter vivos of the bond’ we do not construe this provision as making unlawful such transfer, as between a donor and donee. Whether the quoted provision would become material in a controversy between the donee and the government is a question not before us, this being a suit between the donee and the executor of the decedent. Moreover, the fact that the donee may experience some difficulty in procuring the proceeds of the securities when they are presented to the issuing agency for payment is also outside the issue. But whatever the outcome of her controversy with the federal government may be when the bond is presented for reissue or payment, it is clear to us that as against the executor of the decedent she may acquire the bond by gift inter vivos, and with it whatever value it may possess in her hands. See In re Dis-kin’s Estate, supra; Blair v. Kirchner, supra.”

See also In re De Nat’s Estate, 14 Misc. 2d 739, 179 N.Y.S.2d 522 (1958).
Appellants assert that this cause is controlled by Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). That case involved the question of whether the Treasury Regulations creating a right of survivorship in United States Savings Bonds pre-empted any inconsistent Texas community property law by virtue of the Supremacy clause of the Constitution (Art. VI, clause 2). No such conflict is present in the case sub judice. In holding that the Treasury Regulation pre-empted the conflicting Texas law, however, the Supreme Court noted at 369 U.S. 670, 82 S.Ct. 1094: * * * * * *
“ * * * While affording purchasers of bonds the opportunity to choose a survivorship provision which must be recognized by the States, the regulations neither insulate the purchasers from all claims regarding ownership nor immunize the bonds from execution in satisfaction of a judgment.”
******
See also O’Brien v. Elder, 250 F.2d 275 (5th Cir. 1958); Tharp v. Besozzi, 128 Ind. App. 73, 144 N.E.2d 430 (1957).
For the aforesaid reasons the final order herein appealed be and the same is
Affirmed.