PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SCOTT ANDOCHICK, M.D.,

        *Plaintiff-Appellant,*

v.

RONALD BYRD, Individually; JUNE
BYRD, Individually; RONALD AND
JUNE BYRD, As Co-Administrators
of the Estate of Erika L. Byrd,

        *Defendants-Appellees.*

No. 12-1728

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Liam O'Grady, District Judge.
(1:11-cv-00739-LO-JFA)

Argued: January 30, 2013

Decided: March 4, 2013

Before MOTZ, KING, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge King and Judge Floyd joined.

## COUNSEL

**ARGUED:** George Olai Peterson, PETERSON SAYLOR, PLC, Fairfax, Virginia, for Appellant. Karl William Pilger, BORING & PILGER, PC, Vienna, Virginia, for Appellees. **ON BRIEF:** Michael T. Marr, PETERSON SAYLOR, PLC, Fairfax, Virginia, for Appellant.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Scott Andochick brought this declaratory judgment action, asserting that ERISA preempted a state court order requiring him to turn over benefits received under ERISA retirement and life insurance plans owned by his deceased ex-wife, Erika Byrd. ERISA obligates a plan administrator to pay plan proceeds to the named beneficiary, here Andochick. The only question before us is whether ERISA prohibits a state court from ordering Andochick, who had previously waived his right to those benefits, to relinquish them to the administrators of Erika's estate. Andochick appeals the district court's grant of the administrators' motion to dismiss the ERISA preemption claim. For the reasons that follow, we affirm.

I.

The parties do not dispute the relevant facts.

In February 2005, Scott Andochick and Erika Byrd married. During the marriage, Erika worked as an attorney at Venable, LLP, where she participated in the Venable Retirement ("401(k)") Plan and the Venable Life Insurance Plan. Erika executed beneficiary designations for both plans, naming Andochick as her primary beneficiary. The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, governs both plans.

In July 2006, Andochick and Erika separated and entered into a marital settlement agreement. In the agreement, Andochick "waive[d] any interest, including but not limited to any survivor benefits, which he may have in Erika's Venable LLP 401(k) Plan." Further, he released and relinquished any future rights "as a beneficiary under any life insurance policy . . . or any other beneficiary designation made prior to the execution of th[e] Agreement." Finally, Andochick agreed to execute any documents required to carry out the provisions of the agreement.

In December 2008, Andochick and Erika divorced, and the judgment of divorce incorporated their marital settlement agreement. When Erika died in April 2011, her parents, Ronald and June Byrd, qualified as administrators of her estate.

At the time of her death, Erika had failed to name a new beneficiary of her ERISA plans. The ERISA plan administrators of Erika's 401(k) and life insurance plans determined that the proceeds of both plans should be paid to Andochick, because he remained the named beneficiary of the plans. The Byrds appealed the administrators' decisions. The administrator of the 401(k) plan affirmed its determination, but the administrator of the life insurance plan found that it was unable to make a determination and stated its intention to file an interpleader in the district court.

In addition to appealing the plan administrators' decisions, the Byrds made a direct claim on Andochick, asserting that he was in breach of the marital settlement agreement and demanding that he sign waivers renouncing any right to the plan proceeds. Andochick refused.

On July 13, 2011, Andochick filed this action in the federal district court for the Eastern District of Virginia asking for a declaratory judgment that ERISA preempts the waiver provisions in the marital settlement agreement and the Byrds therefore have no claim to the plan proceeds. Andochick also

asked for a declaratory judgment that the Byrds lacked standing to enforce the marital settlement agreement, and that the Byrds converted an automobile that properly belonged to Andochick.

Two days later, on July 15, 2011, the Byrds filed suit against Andochick in the Circuit Court for Montgomery County, Maryland, asking the court to find Andochick in contempt of the marital settlement agreement and judgment of divorce, and to order him to waive his rights to the 401(k) and life insurance proceeds. The state court found Andochick in contempt of the judgment of divorce and ordered him to take all actions necessary to renounce his interests in Erika's plan benefits. However, the court specifically declined to address what effect, if any, ERISA might have on the ultimate enforceability of Andochick's waiver.

Given this success, the Byrds returned to the federal court, which had stayed its proceedings pending conclusion of the state court action, and moved to dismiss Andochick's complaint. In response, Andochick moved for partial summary judgment. The district court granted the Byrds' motion to dismiss as to standing and ERISA preemption and denied Andochick's motion for summary judgment as moot.[1] The district court "directed" the plan administrators "to pay the ERISA funds to Andochick," and held that, "[i]n accordance with the [state court's] order, Andochick must then waive his right to these funds, distributing them instead to Erika's estate." *Andochick v. Byrd*, No. 1:11-cv-739, 2012 WL 1656311, at *13 (E.D. Va. May 9, 2012).

Andochick timely noted this appeal, pursuing only the

---

[1]The court noted that Andochick's conversion claim was valued at $25,000, an amount insufficient to establish diversity jurisdiction. Given that Andochick's federal claims had been dismissed, the court refused to exercise supplemental jurisdiction over the conversion claim and dismissed it without prejudice.

ERISA claim. We review de novo the district court's grant of the Byrds' motion to dismiss. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).[2]

## II.

ERISA requires that "[e]very employee benefit plan . . . be established and maintained pursuant to a written instrument" that "specif[ies] the basis on which payments are made to and from the plan." 29 U.S.C. §§ 1102(a)(1), (b)(4). ERISA then directs the plan administrator to discharge his duties "in accordance with the documents and instruments governing the plan." *Id.* § 1104(a)(1)(D). In *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009), the Supreme Court held that an ERISA plan administrator must distribute benefits to the beneficiary named in the plan, regardless of any state-law waiver purporting to divest that beneficiary of his right to the benefits. *Kennedy* explicitly left open the question of whether, once the benefits are distributed by the administrator, the decedent's estate can enforce a waiver against the plan beneficiary. *See id.* at 299 n.10 ("Nor do we express any view as to whether the Estate could have brought an action in state or federal court against [the plan beneficiary] to obtain the benefits after they were distributed."). That is the question we address today.[3]

---

[2] We note the Byrds contend that the district court should have granted their motion to dismiss without reaching the merits of the case. They maintain that res judicata bars Andochick's declaratory judgment action. We agree with the district court that the state court explicitly declined to decide what effect ERISA might have on the ultimate disposition of the plan proceeds, so res judicata does not bar Andochick from pursuing his ERISA preemption claim in federal court. The Byrds additionally argue that Andochick's claim is unsuitable for a declaratory judgment action and that Andochick lacks standing. The district court ably dealt with these arguments and we need not revisit them here.

[3] This suit names the Byrds in their individual capacities and as administrators of Erika's estate. The Byrds argued before the district court that Ms. Byrd should receive some of the plan proceeds as a second named beneficiary on one of the plans. We agree with the district court that *Kennedy* forecloses this result.

A.

Though the *Kennedy* Court expressly declined to decide the issue we now address, Andochick contends that the Court's reasoning in that case dictates that ERISA must preempt waivers of the kind embodied in the marital settlement agreement. We find this argument unconvincing.

In *Kennedy*, the Court emphasized three important ERISA objectives: "[1] simple administration, [2] avoid[ing] double liability [for plan administrators], and [3] ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules." *Id.* at 301 (some alterations in original) (citation omitted).

Allowing post-distribution suits to enforce state-law waivers does nothing to interfere with any of these objectives. For in situations like that at issue here, *Kennedy* merely dictates that the plan administrator distribute plan benefits to the named beneficiary. This ensures simple administration regardless of whether post-distribution suits are permitted, because the plan administrator would have no role in any post-distribution proceedings. For the same reason, post-distribution suits do not expose the plan administrator to double liability—only the named beneficiary has any claim against the plan administrator.

Finally, as the Third Circuit recently explained when addressing facts nearly identical to those at hand, "the goal of ensuring that beneficiaries 'get what's coming quickly' refers to the expeditious distribution of funds *from plan administrators*, not to some sort of rule providing continued shelter from contractual liability to beneficiaries who have *already received* plan proceeds." *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 136 (3d Cir. 2012). Permitting a post-distribution suit against a plan beneficiary based on his pre-distribution waiver does not prevent the beneficiary from "get[ting] what's coming quickly." Rather, as the district court

noted, it merely prevents him from keeping what he "quickly" received. Thus, we conclude that permitting post-distribution suits accords with the ERISA objectives discussed in *Kennedy*.

## B.

Andochick maintains, however, that *Boggs v. Boggs*, 520 U.S. 833 (1997), and *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001), "establish that a pre-distribution waiver" should not be held "effective against post-distribution proceeds." Plaintiff-Appellant's Br. at 22. Given that *Boggs* and *Egelhoff* pre-date *Kennedy*, in which the Supreme Court expressly left this question open, Andochick's argument seems dubious indeed. Moreover, examination of *Boggs* and *Egelhoff* reveals that they lend Andochick no support.

In *Boggs*, the Court held that ERISA preempted a Louisiana community property law that would have allowed a plan participant's first wife to transfer by will her interest in the participant's undistributed retirement benefits. 520 U.S. 833. Andochick contends *Boggs* established that there is no distinction between a suit claiming entitlement to undistributed plan benefits, as in *Kennedy*, and one claiming entitlement to distributed plan benefits, as here. This argument fails.

First, *Boggs* involved a very different situation from that at issue here, and its reasoning does not logically extend to this case. Operation of the community property law at issue in *Boggs* would have resulted in the diversion of plan benefits without the consent of the plan participant. *See Boggs*, 520 U.S. at 852 (noting that, unless ERISA preempted the state statute, "retirees could find their retirement benefits reduced by substantial sums because they have been diverted to testamentary recipients"). Here, by contrast, the plan participant and beneficiary *agreed* that the beneficiary would waive his interest in the plan benefits.

Further, as several other courts have noted, while the suit in *Boggs* took place after benefits were distributed, unlike the case at hand it involved a claimed interest in *undistributed* plan benefits. *See Estate of Kensinger*, 674 F.3d at 138 (distinguishing *Boggs* from a situation parallel to that at issue here on the basis that *Boggs* involved a claimed interest in undistributed pension plan benefits); *Alcorn v. Appleton*, 708 S.E.2d 390, 392 (Ga. Ct. App. 2011) (same), *aff'd*, 728 S.E.2d 549, 551-52 (Ga. 2012); *Pardee v. Pers. Representative for Estate of Pardee*, 112 P.3d 308, 313-14 (Okla. Civ. App. 2004) (same); *see also Boggs*, 520 U.S. at 854 ("It does not matter that respondents have sought to enforce their rights only after the retirement benefits have been distributed since their asserted rights are based on the theory that they had an interest in the undistributed pension plan benefits.").

Thus, *Boggs* does not lend support to Andochick's contention that ERISA preempts post-distribution suits of the kind at issue here.

*Egelhoff* is no more helpful to Andochick. In *Egelhoff*, the Court held that ERISA preempted the application of a state statute that automatically revoked, upon divorce, any designation of a spouse as a beneficiary of an ERISA benefit plan. 532 U.S. at 146-50. The Court based its holding on the fact that the state statute required administrators to "pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents," *id.* at 147, creating a "direct[ ] conflict[ ] with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents." *Id.* at 150. Post-distribution suits of the kind at issue here simply do not require plan administrators to pay benefits to anyone other than the named beneficiary. Accordingly, *Egelhoff* is inapposite.

## C.

Because we detect no conflict with either ERISA's objectives or relevant Supreme Court precedent, we hold that

ERISA does not preempt post-distribution suits against ERISA beneficiaries. We note that in reaching this conclusion, we adopt the same view as every published appellate opinion to address the question. *See Estate of Kensinger*, 674 F.3d at 135-39; *Appleton v. Alcorn*, 728 S.E.2d at 552, *aff'g* 708 S.E.2d at 392; *Sweebe v. Sweebe*, 712 N.W.2d 708, 714 (Mich. 2006); *Pardee*, 112 P.3d at 315-16.

## III.

For the reasons set forth above, the judgment of the district court is

*AFFIRMED*.