**Affirmed and Opinion filed March 28, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00787-CV

---

**LISA SMALLEY, Appellant**

**V.**

**ERIC C. SMALLEY, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF JOHN HUBERT SMALLEY, III, DECEASED, Appellee**

---

**On Appeal from the Probate Court No. 3
Harris County, Texas
Trial Court Cause No. 396,118-402**

---

## O P I N I O N

An ex-wife appeals from the trial court's order granting summary judgment in favor of the administrator of the estate of her ex-husband and denying the ex-

wife's motion for summary judgment. The ex-wife also challenges the trial court's final judgment awarding attorney's fees to the administrator. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

John Hubert Smalley, III, was a federal employee covered by the Federal Employees' Retirement System. John participated in a Thrift Savings Plan, a type of retirement savings account for federal employees that is administered by the Federal Retirement Thrift Investment Board ("Board").[1] In February 1993, prior to John's marriage to appellant Lisa Smalley, John designated Lisa as the beneficiary of John's Thrift Savings Plan; it is undisputed that John's designation was valid and made in accordance with federal regulations. John and Lisa were married in September of that same year. John also designated Lisa as the "payable on death" beneficiary of 150 United States Savings Bonds, which were issued between August 2003 and June 2008 ("Savings Bonds").

John and Lisa were divorced in September 2008. The agreed final divorce decree incorporated terms of a signed mediation agreement; the parties stipulated that their written agreement contained in the divorce decree was enforceable as a contract. The divorce decree provides, in relevant part, as follows:

> IT IS ORDERED AND DECREED that the husband, John Hubert Smalley, III, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:
>
> . . .

---

[1] A federal employee covered by the Federal Employees' Retirement System is eligible to receive, among other benefits, the opportunity to participate in a Thrift Savings Plan. *See* 5 U.S.C. § 8432(a) (West 2013).

H-4. Any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to the following:

> a. The Thrift Savings Plan U.S. Government Retirement Account in the name of the husband, subject to any indebtedness thereon; and

. . .

H-6. The following stocks, bonds, and/or securities, together with all dividends, splits, and other rights and privileges in connection therewith:

> a. The U.S. Treasury Savings Bonds, Series 1, EE, E and Savings Notes in the name of either or both parties.

It is undisputed that John did not change the beneficiary for his Thrift Savings Plan following his divorce from Lisa, and that no contingent beneficiary was named. It is undisputed that John did not have the Savings Bonds reissued and did not change the beneficiary designation for the Savings Bonds following the couple's divorce.

John died intestate in February 2010. Following John's death, Lisa submitted a request for the funds from John's Thrift Savings Plan, claiming to be the beneficiary of this plan. The Board determined that Lisa was the beneficiary of one-hundred percent of the proceeds from this plan. The Board distributed these proceeds, amounting to over $300,000, to Lisa, who transferred the funds into an inherited Individual Retirement Account. No other sums remained in John's Thrift Savings Plan account following the distribution. Following John's death, Lisa obtained possession of the Savings Bonds, which had a redemption value in excess of $20,000 as of June 2011.

3

Appellee Eric Smalley, in his capacity as independent administrator of the estate of John Hubert Smalley, III, deceased (the "Administrator") filed a petition in the probate court below seeking to enforce the terms of John and Lisa's agreed final divorce decree as it pertained to the Savings Bonds and proceeds distributed from the Thrift Savings Plan. The Administrator asked the trial court to order Lisa to deliver to the Administrator the proceeds from John's Thrift Savings Plan and the Savings Bonds. The Administrator also sought to recover his reasonable attorney's fees.

The parties filed cross-motions for summary judgment. Lisa, by traditional motion for summary judgment, sought the following relief from the trial court:

- a declaration that Lisa is the legal owner of the proceeds from John's Thrift Savings Plan,

- a declaration that Lisa is the legal owner of the Savings Bonds,

- dismissal of the Administrator's claims on the grounds that the Administrator's waiver theory based upon the divorce decree is either preempted by federal law or violates an anti-alienation statute applicable to the Thrift Savings Plan, and

- an award to Lisa and against the Administrator of Lisa's reasonable and necessary attorney's fees.

In the alternative, Lisa asserted a no-evidence ground claiming that there was no evidence of Lisa's intent to relinquish her rights to the proceeds from John's Thrift Savings Plan and the Savings Bonds.

In his motion, the Administrator sought judgment as a matter of law on his claims. The Administrator asserted that the agreed divorce decree operated as a waiver of all Lisa's rights to the proceeds from the Thrift Savings Plan and to the Savings Bonds. The Administrator also argued, that neither federal preemption nor

4

the anti-alienation statute applicable to the Thrift Savings Plan prevent enforcement of the waiver in the agreed final divorce decree.

Following a hearing on the motions, the trial court granted the Administrator's motion, ruling that (1) the divorce decree was an enforceable contract; (2) under the terms of the divorce decree Lisa waived her right to the proceeds from John's Thrift Savings Plan and to the Savings Bonds; and (3) Lisa breached the contract by obtaining and retaining the Savings Bonds and the proceeds from the Thrift Savings Account. The trial court ordered Lisa to deliver to the Administrator the Savings Bonds and all proceeds from the Thrift Savings Account. The trial court denied Lisa's motion for summary judgment. Following a bench trial on attorney's fees, the trial court rendered final judgment, incorporating its prior summary-judgment order and awarding the Administrator reasonable and necessary attorney's fees for trial as well as conditional awards of reasonable and necessary appellate attorney's fees.

## II. STANDARDS OF REVIEW

Lisa challenges the trial court's summary judgment in favor of the Administrator and the trial court's denial of her motion for summary judgment. In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex.

5

2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## III. ANALYSIS

### A. Does the Administrator have standing to bring the claims regarding the proceeds from the Thrift Savings Plan?

Under her first issue, Lisa argues that the trial court lacked jurisdiction over the Administrator's claims regarding the proceeds from the Thrift Savings Plan because the Administrator lacks standing to bring these claims. The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). A plaintiff has standing when it is personally aggrieved. *Id.* The standing doctrine requires that there be a real controversy between the parties that actually will be determined by the judicial declaration sought. *Id.* at 849.

Lisa argues that, applying certain federal regulations, the Administrator has no claim to any of the proceeds from John's Thrift Savings Plan. But Lisa's argument goes to the merits of the Administrator's claims. Lisa does not assert that the Administrator lacks a sufficient relationship with this lawsuit so as to have a "justiciable interest" in its outcome or that the Administrator has not been

6

aggrieved by Lisa's alleged failure to abide by her waiver of rights in the divorce decree. Lisa does not argue that there is no real controversy between Lisa and the Administrator that actually will be determined by the judicial relief sought by the Administrator. We conclude that the Administrator has standing to assert the claims he asserted in the trial court and upon which the trial court rendered judgment. *See id.* at 848–49 (discussing standing principles); *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 134, n.3 (3d Cir. 2012) (concluding that estate of deceased participant in a 401(k) plan governed by the Employee Retirement Income Security Act had standing to assert claims seeking recovery of funds distributed to ex-wife of deceased participant, as the designated beneficiary of the 401(k) plan, based upon ex-wife's alleged waiver of her right to these funds in divorce decree). We overrule the first issue.

**B.   Did the trial court err in ordering enforcement of the portions of the divorce decree relating to the proceeds from the Thrift Savings Plan because those portions are preempted by federal law?**

Lisa asserts that the trial court erred in ordering enforcement of the portions of the agreed divorce decree relating to the proceeds from John's Thrift Savings Plan because those portions are preempted by the following federal law: (1) the anti-alienation provision found in Title 5, section 8437(e)(2) of the United States Code, and (2) federal regulations regarding beneficiary designations for John's Thrift Savings Plan. *See* 5 U.S.C. § 8437(e)(2) (West 2013); 5 C.F.R. § 1651.1, *et seq*. We address each preemption argument in turn.

**1.   *Title 5, section 8437(e)(2) of the United States Code***

A federal statute governing Thrift Savings Plans provides that "sums in the Thrift Savings Fund may not be assigned or alienated . . . ." 5 U.S.C. § 8437(e)(2). The language of this statute is substantially similar to part of the Employee

Retirement Income Security Act ("ERISA"), under which each pension plan must provide that benefits under the plan may not be "assigned or alienated." 29 U.S.C. § 1056(d)(1) (West 2013). Both the Supreme Court of the United States and the Supreme Court of Texas have held that ERISA's anti-alienation provision does not apply to or prevent a claim that a former spouse waived her rights to the proceeds from an ERISA plan in a divorce decree. *See Kennedy v. Plan Adm'r for DuPont Savs. & Inv. Plan*, 555 U.S. 285, 292–99, 129 S. Ct. 865, 870–74, 172 L. Ed. 2d 662 (2009); *Keen v. Weaver*, 121 S.W.3d 721, 727 (Tex. 2003), *abrogated on other grounds by Kennedy*, 555 U.S. at 299–304, 129 S. Ct. at 874–77. These courts concluded that such a waiver of rights does not constitute an assignment or alienation of ERISA plan benefits. *See Kennedy*, 555 U.S. at 292–99, 129 S. Ct. at 870–74; *Keen*, 121 S.W.3d at 727. Applying analogous reasoning in the case under review, we conclude that Lisa's alleged waiver of her rights to the proceeds from John's Thrift Savings Plan does not constitute an assignment or alienation of sums in the Thrift Savings Fund that would violate or be preempted by Title 5, section 8437(e)(2) of the United States Code. *See* 5 U.S.C. § 8437(e)(2); *Kennedy*, 555 U.S. at 292–99, 129 S. Ct. at 870–74; *Keen*, 121 S.W.3d at 727.

### 2. *Federal Regulations Regarding Beneficiary Designations for Thrift Savings Plans*

Lisa asserts that, under federal regulations regarding beneficiary designations for Thrift Savings Plans, she was the sole beneficiary of John's Thrift Savings Plan, and the funds from this plan properly were distributed to her. Lisa asserts that these federal regulations preempt the Administrator's claims based upon an alleged waiver by Lisa of her rights to retain the proceeds from this plan. The Administrator agrees that under these federal regulations, the funds from John's Thrift Savings Plan properly were distributed to Lisa, but the Administrator

8

asserts that he still is entitled to enforce Lisa's alleged waiver of rights to these proceeds. In analyzing this issue, we are guided by analogous cases involving ERISA plans.

ERISA requires that every employee benefit plan be established and maintained pursuant to a written instrument that specifies the basis on which payments are made to and from the plan. 29 U.S.C. §§ 1102(a)(1), (b)(4) (West 2013). ERISA directs the plan administrator to discharge his duties in accordance with the documents and instruments governing the plan. *Id.* § 1104(a)(1)(D). In *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, the Supreme Court of the United States held that an ERISA plan administrator must distribute benefits to the beneficiary named in the plan, regardless of any state-law waiver purporting to divest that beneficiary of his right to the benefits. *See Kennedy*, 555 U.S. at 299–304, 129 S. Ct. at 874–77. The *Kennedy* court explicitly left open the question of whether, once the benefits are distributed by the administrator, the decedent's estate may enforce a waiver against the plan beneficiary. *See id.* at 299 n.10, 875 n.10 ("Nor do we express any view as to whether the Estate could have brought an action in state or federal court against [the plan beneficiary] to obtain the benefits after they were distributed."). Though the *Kennedy* court expressly declined to decide the issue we now address, Lisa contends that, applying the *Kennedy* court's reasoning by analogy to the case under review leads to the conclusion that the federal regulations regarding the Thrift Savings Plan preempt waivers of the kind embodied in the agreed divorce decree. We disagree.

In *Kennedy,* the high court emphasized three important ERISA objectives: (1) "simple administration," (2) "avoid[ing] double liability [for plan administrators]," and (3) "ensur[ing] that beneficiaries get what's coming quickly,

9

without the folderol essential under less-certain rules." *Id.* 555 U.S. at 301, 129 S. Ct. at 875–76. (some alterations in original) (citation omitted); *Andochick v. Byrd*, —F.3d—,—, No. 12-1728, 2013 WL 781978, at \*3 (4th Cir. Mar. 4, 2013). Allowing post-distribution suits to enforce common-law waivers does nothing to interfere with any of these objectives. *See Andochick*, 2013 WL 781978, at \*3. For situations like that in the case under review, *Kennedy* dictates only that the Thrift Savings Plan benefits be distributed to the named beneficiary. *See id*. This rule ensures simple administration regardless of whether post-distribution suits are permitted, because the Board (the plan administrator) would have no role in any post-distribution proceedings. *See id*. For the same reason, post-distribution suits do not expose the Board to double liability—only the named beneficiary has any claim against the Board. Finally, "the goal of ensuring that beneficiaries 'get what's coming quickly' refers to the expeditious distribution of funds *from plan administrators,* not to some sort of rule providing continued shelter from contractual liability to beneficiaries who have *already received* plan proceeds." *Estate of Kensinger*, 674 F.3d at 136. *Accord Andochick*, 2013 WL 781978, at \*3. Allowing a post-distribution suit against a plan beneficiary based on her pre-distribution waiver does not prevent the beneficiary from "get[ting] what's coming quickly." *See Andochick*, 2013 WL 781978, at \*3; *Estate of Kensinger*, 674 F.3d at 136. Rather, such a suit only prevents her from keeping what she "quickly" received.[2] *See Andochick*, 2013 WL 781978, at \*3; *Estate of Kensinger*, 674 F.3d

---

[2] Lisa cites cases holding that the regulations regarding Thrift Savings Plans preempt state law regarding the determination of who is the beneficiary to whom the Board should distribute the Thrift Savings Plan benefits. *See Hewitt v. Thrift Sav. Plan*, 664 F.Supp.2d 529, 530, 531–33 (D. S.C. 2009); *Faris v. Long*, No. 2:07-CV-102, 2008 WL 612938, at \*4–5 (E.D. Tenn. Mar. 4, 2008). Lisa also cites cases holding that the Servicemen's Group Life Insurance Act and regulations issued thereunder preempt contrary state law regarding the designation of life insurance beneficiaries. *See Ridgway v. Ridgway*, 454 U.S. 46, 54–58, 102 S.Ct. 49, 54–56, 70 L.Ed.2d 39 (1981); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366–67 (8th Cir. 1997). Because

at 136–37.  Therefore, we conclude that permitting post-distribution suits accords with the objectives discussed in *Kennedy.  See Andochick*, 2013 WL 781978, at *3; *Estate of Kensinger*, 674 F.3d at 136–37.

Lisa relies upon *Boggs v. Boggs*, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) and *Barnett v. Barnett*, 67 S.W.3d 107 (Tex. 2001).  *Boggs* and *Barnett* pre-date *Kennedy,* in which the Supreme Court expressly left this question open. Moreover, examination of *Boggs* and *Barnett* reveals that they do not support Lisa's argument.

In *Boggs,* the Court held that ERISA preempted a Louisiana community-property law that would have allowed a plan participant's first wife to transfer by will her interest in the participant's undistributed retirement benefits.  *See Boggs*, 520 U.S. at 853–54, 117 S.Ct. at 1766–67. *Boggs* involved a very different situation from that at issue in the case under review, and its reasoning does not logically extend to this case.  *See Andochick*, 2013 WL 781978, at *3; *Estate of Kensinger*, 674 F.3d at 138.  Operation of the community-property law at issue in *Boggs* would have resulted in the diversion of plan benefits without the consent of the plan participant. *See Boggs*, 520 U.S. at 851–52, 117 S.Ct. at 1765–66.  By contrast, in the case under review, the plan participant and beneficiary *agreed* that the beneficiary would waive her rights and interest in the plan benefits.  *See Andochick*, 2013 WL 781978, at *3.  Further, as several other courts have noted, while the suit in *Boggs* took place after benefits were distributed, *Boggs* involved a claimed interest in *undistributed* plan benefits, unlike the case under review.  *See Andochick*, 2013 WL 781978, at *3; *Estate of Kensinger*, 674 F.3d at 138.  Thus,

---

these cases do not address claims against beneficiaries after they have received plan benefits, these cases are not on point.

11

*Boggs* does not lend support to Lisa's contention that federal law preempts post-distribution suits of the kind at issue in today's case.

In *Barnett,* the Supreme Court of Texas held that ERISA preempted a claim by one seeking to impose a constructive trust on insurance policy proceeds to remedy constructive fraud on the community. *See* 67 S.W.3d at 112–21. The *Barnett* case did not involve a divorce decree or an alleged waiver by a former spouse in a divorce decree. *See id.* at 109–110. Though the *Barnett* court addressed cases dealing with such alleged waivers, the portion of the opinion that addressed these cases was a four-justice plurality. *See id.* at 121–126; *id.* at 126–127 (Enoch, J., concurring). Significantly, after *Barnett* was decided, the Supreme Court of Texas held that ERISA does not preempt a claim under federal common law to enforce a waiver by an ex-spouse in a divorce decree of her interest in ERISA plan benefits against the ERISA plan administrator. *See Keen*, 121 S.W.3d at 724–729. The *Keen* court stated that its decision was consistent with the court's prior opinion in *Barnett*. *See id.* at 726. Though the *Kennedy* court abrogated *Keen* to the extent *Keen* allowed waiver claims to be asserted against the plan administrator, the *Keen* case shows that *Barnett* does not require the result for which Lisa argues. *See Kennedy*, 555 U.S. at 299–304, 129 S. Ct. at 874–77; *Keen* 121 S.W.3d at 726. The *Barnett* case is not on point.

Concluding that there is no conflict with the objectives of the federal regulations governing Thrift Savings Plans, we hold that these regulations do not preempt post-distribution suits against Thrift Savings Plan beneficiaries. *See Andochick*, 2013 WL 781978, at *2–4 (holding that ERISA does not preempt post-distribution suits against ERISA beneficiaries alleging waiver); *Estate of Kensinger*, 674 F.3d at 135–139 (same as *Andochick*); *Flesner v. Flesner*, 845 F.Supp.2d 791, 799–802 (S.D. Tex. 2012) (same as *Andochick*); *In re Estate of*

*Kelly*, 950 N.Y.S.2d 415, 417–19 (N.Y. Sur. Ct. 2012) (holding that federal regulations regarding Thrift Savings Plans did not prevent post-distribution suit against Thrift Savings Plan beneficiary alleging waiver); *Appleton v. Alcorn*, 728 S.E.2d 549, 551–52 (Ga. 2012) (same as *Andochick*); *Sweebe v. Sweebe*, 712 N.W.2d 708, 711–14 (Mich. 2006) (same as *Andochick*); *Pardee v. Pers. Representative for Estate of Pardee*, 112 P.3d 308, 312–15 (Ok. App. Ct. 2004) (holding that ERISA does not preempt post-distribution suits against ERISA beneficiaries). Accordingly, we overrule Lisa's fourth, fifth, and sixth issues as they relate to the Administrator's claims regarding the proceeds from John's Thrift Savings Plan.

**C.   Did the trial court err in ordering enforcement of the portions of the divorce decree relating to the Savings Bonds because those portions are preempted by federal law?**

Lisa asserts that the trial court erred in ordering enforcement of the portions of the divorce decree relating to the Savings Bonds because those portions are preempted by federal law requiring the enforcement of the designation of Lisa as the "payable on death" beneficiary of the Savings Bonds. Lisa relies upon the opinion of the Supreme Court in *Free v. Bland*. *See* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). The *Free* court held that Texas community-property law is preempted to the extent that it prohibits a married couple from taking advantages of the survivorship rights for United States Savings Bonds afforded in applicable federal regulations. *See Free*, 369 U.S. at 666–71, 82 S.Ct. at 1092–94. The *Free* case did not involve a divorce decree or an alleged waiver by a former spouse in a divorce decree. *See id*. In addition, the *Free* court relied upon the regulation stating that "[t]he Department of the Treasury will not recognize . . . a judicial determination that impairs the rights of survivorship conferred by these regulations

13

upon a coowner or beneficiary." 31 C.F.R. § 315.20(a). *See Free*, 369 U.S. at 667–68, 82 S.Ct. at 1092–93. But, the federal regulations regarding savings bonds provide that "[t]he Department of the Treasury will recognize a divorce decree that ratifies or confirms a property settlement agreement disposing of bonds or that otherwise settles the interests of the parties in a bond. Reissue of a savings bond may be made to eliminate the name of one spouse as owner, coowner, or beneficiary, or to substitute the name of one spouse for that of the other spouse as owner, coowner, or beneficiary pursuant to the decree." 31 C.F.R. § 315.22(a). Citing this regulation, among others, the *Free* court stated: "While affording purchasers of bonds the opportunity to choose a survivorship provision which must be recognized by the States, the regulations neither insulate the purchasers from all claims regarding ownership nor immunize the bonds from execution in satisfaction of a judgment." *Free*, 369 U.S. at 670, 82 S.Ct. at 1094. Thus, the case under review does not fall within the holding in *Free*, and the regulations upon which Lisa relies do not conflict with enforcement of the alleged waiver by Lisa of her rights and interest as "payable on death" beneficiary for the Savings Bonds. *See Meer v. Garvey*, 212 So.2d 97, 98–99 (Fla. Ct. App. 1968) (holding that enforcement of waiver by ex-wife of her rights and interest as "payable on death" beneficiary for United States Savings Bonds did not conflict with federal regulations regarding the savings bonds and distinguishing the *Free* case). Concluding that there is no conflict with the objectives of the federal regulations governing the Savings Bonds, we hold that these regulations do not preempt the Administrator's claims regarding the Savings Bonds. *See Meer*, 212 So.2d at 98–99. Accordingly, we overrule Lisa's fourth, fifth, and sixth issues as they relate to the Administrator's claims regarding the Savings Bonds.

14

**D.** **Did the trial court err in awarding the Savings Bonds and the proceeds from the Thrift Savings Plan to the Administrator despite John's alleged conscious decision to retain Lisa as his beneficiary after divorce?**

In her second and third issues, Lisa asserts that the trial court erred in granting summary judgment awarding the Savings Bonds and the proceeds from the Thrift Savings Plan to the Administrator because of evidence allegedly showing a conscious decision by John to retain Lisa as his beneficiary after divorce. Lisa bases this argument on her testimony that, after she and John divorced, John told her that "he had made no changes to any of his beneficiaries." We presume for the sake of argument that Lisa testified that John told her he had made no changes to the beneficiary designation for John's Thrift Savings Plan or to the "payable on death" beneficiary designations for the Savings Bonds. But, given Lisa's unambiguous waiver of her beneficiary rights in the agreed divorce decree, there was no need for John to change the designations, and any statement by John that he had not changed these designations ("No-Change Statement") does not raise a genuine fact issue as to whether John made a conscious decision after the divorce decree to retain Lisa as his beneficiary. Any statement by John that he had not changed the beneficiary designations does not show that John desired Lisa to receive the proceeds from the Thrift Savings Plan after his death or to have the right to surrender the Savings Bonds for payment after his death. Under the unambiguous language of the agreed divorce decree, Lisa waived any rights related to John's Thrift Savings Plan and any rights and privileges connected with the Savings Bonds. *See Olmstead v. Napoli*, 383 S.W.3d 650, 652–54 (Tex. App.— Houston [14th Dist.] 2012, no pet.). In this context, and under the summary-judgment standard of review, we conclude that evidence that John made the No-Change Statement does not raise a genuine fact issue as to whether the

15

Administrator may enforce Lisa's waiver. *See Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 335 (Tex. App.—Dallas 2011, no pet.). Accordingly, we overrule Lisa's second and third issues.

**E. Has Lisa shown error in the trial court's rulings regarding attorney's fees?**

Under her seventh issue, Lisa asserts that the trial court erred in ordering her to pay the Administrator's attorney's fees because the Administrator is not entitled to any recovery. Under her eighth issue, Lisa asserts that the trial court erred in failing to order the Administrator to pay Lisa's attorney's fees because Lisa is entitled to the relief she sought in the trial court. Lisa has not shown that the Administrator is not entitled to any recovery or that Lisa is entitled to the relief she sought in the trial court. Therefore, we overrule Lisa's seventh and eighth issues.

**F. Did the trial court err in allegedly granting turnover relief?**

Under her ninth issue, Lisa asserts that the trial court erred in granting turnover relief in its judgment without requiring that the Administrator satisfy the requirements for turnover relief under Texas Civil Practice and Remedies Code section 31.002, entitled "Collection of Judgment Through Court Proceeding." *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West 2013). But, the trial court issued a final judgment granting relief requested in the Administrator's pleadings. The trial court did not grant aid to a judgment creditor through injunction or other means to reach property to obtain satisfaction on the judgment. The trial court did not grant turnover relief, and thus there was no need to satisfy the requirements of Texas Civil Practice and Remedies Code section 31.002. *See id.* Accordingly, we overrule the ninth issue.

16

## CONCLUSION

The Administrator has standing to assert the claims he asserted in the trial court and upon which the trial court rendered judgment. Lisa's waiver of her rights to the proceeds from John's Thrift Savings Plan does not constitute an assignment or alienation of sums in the Thrift Savings Fund that would violate or be preempted by Title 5, section 8437(e)(2) of the United States Code. The federal regulations governing Thrift Savings Plans do not preempt post-distribution suits against Thrift Savings Plan beneficiaries, and the federal regulations governing the Savings Bonds do not preempt the Administrator's claims regarding the Savings Bonds. Evidence that John made the No-Change Statement does not raise a genuine fact issue as to whether the Administrator may enforce Lisa's waiver in the divorce decree. Having overruled all of Lisa's issues, we affirm the trial court's judgment.

/s/    Kem Thompson Frost
Justice

Panel consists of Justices Frost, McCally, and Busby.

17