# IN THE COURT OF APPEALS OF IOWA

No. 21-0216
Filed April 13, 2022

**UNIVERSITY OF DUBUQUE,**
        Plaintiff-Appellee,

**vs.**

**SHARON FAIRCHILD,**
        Defendant-Appellant/Cross-Appellee,

**and**

**ROBILYN G. COWART,**
        Defendant-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

        Sharon Fairchild appeals a district court ruling on the distribution of benefits, and Robilyn Cowart cross-appeals an attorney-fee ruling. **AFFIRMED.**

        Christopher C. Fry and Alyssa M. Carlson of O'Connor & Thomas, P.C., Dubuque, for appellant.

        Todd J. Locher of Locher & Davis PLC, Farley, for appellee Robilyn G. Cowart.

        Brian J. Kane of Kane, Norby & Reddick, P.C., Dubuque, for appellee University of Dubuque.

        Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**BOWER, Chief Judge.**

Arising from an interpleader action filed by the University of Dubuque (UD), Sharon Fairchild (Sharon) appeals the district court decision concerning the distribution of employee retirement plan benefits of her former spouse, the late Richard E. Cowart Jr. (Richard).[1] Robilyn Cowart (Robilyn) cross-appeals the district court's ruling denying her request for attorney fees. We affirm the district court on both issues.

### I. Background Facts & Proceedings

The following facts are not in dispute. Beginning in January 1998, Richard was employed as a faculty member at UD. Richard was married to Sharon and listed her (under her married name, Sharon Cowart) on his "Application for TIAA and CREF Retirement Annuity Contracts" as the beneficiary.[2]

Richard and Sharon dissolved their marriage five months later in June 1998. In March, Sharon signed a stipulation stating, "I, Sharon Cowart, relinquish any claim to any savings accounts, securities, retirement fund, or inheritance due to or belonging to Richard Cowart." The stipulation was notarized, filed with the court, and became part of the dissolution decree.

Richard married Robilyn in August, but he did not submit a new beneficiary designation form to TIAA (the account administrator) for his UD retirement account. Richard and Robilyn remained married until Richard's death on June 5, 2018.

---

[1] UD, the plan administrator, takes no position on the appropriate beneficiary and will distribute the benefits as directed by the court, waiving the filing of a brief on appeal. The plan is subject to and governed by the Employee Retirement Income Security Act of 1974 (ERISA).

[2] The beneficiary designation form included specification of Sharon's relationship to Richard: "Wife."

Following Richard's death, UD determined Robilyn, as Richard's surviving spouse, was entitled to one-half of the plan benefits pursuant to ERISA provisions requiring a mandatory preretirement death benefit to the surviving spouse of a participant.

On June 15, Robilyn was informed by TIAA that Sharon was the named beneficiary of Richard's plan benefits. Robilyn telephoned Sharon on July 15 and asked Sharon to disclaim Richard's plan benefits. Sharon agreed to do so, and Robilyn asked her attorney to prepare the necessary papers and mail them to Sharon.

On July 19, Sharon signed and sent TIAA the following disclaimer: "I, Sharon Fairchild, hereby disclaim any and all interest that I have in the above referenced TIAA account owned by Richard Elmer Cowart. If you require any further documents to accomplish this disclaimer, please mail them to me at the address above. I look forward to your reply."

Sharon later learned Robilyn would receive half the plan benefits even without the disclaimer. On September 28, Sharon wrote another letter to TIAA seeking half the account—$102, 000.[3]

On October 4, TIAA wrote Robilyn concerning its decision to pay out one-half Richard's benefits to Robilyn as the surviving spouse and one-half to Sharon as the former spouse. TIAA noted it had reviewed the divorce documents between Richard and Sharon but determined they did not apply under *Kennedy v. Plan*

---

[3] In the letter Sharon stated she was "changing my mind" and "I do wish to claim my legal benefits under this account at TIAA."

*Administrator for DuPont Savings and Investment Plan*, 555 U.S. 285 (2009). Robilyn objected, noting Sharon's July disclaimer of benefits.

In spring 2019, TIAA informed Sharon, "TIAA has determined that you are not the designated beneficiary of [Richard's] Dubuque plan account and no benefits are due you." It noted the UD plan "has a provision that automatically revokes the designation of a former spouse upon divorce, unless otherwise directed by a [court order] or upon the participant's subsequent designation of the former spouse as the beneficiary following the divorce." Sharon was informed any further claim for benefits was to be directed to UD as the plan fiduciary and administrator.

Sharon wrote to UD to make a "formal contest" of TIAA's decision denying her benefits. She noted UD's TIAA plan that included the automatic revocation provision was dated 2009 and asserted that unless UD could provide a prior plan with the same revocation provision, the 2009 plan did not apply and she was "the named beneficiary under ERISA law and rulings."

In July, UD filed an interpleader petition in the district court, asking the court to enter a ruling directing UD to hold the benefits from the disputed accounts and adjudicate the rights of Sharon and Robilyn concerning Richard's retirement benefits. Sharon and Robilyn filed cross motions for summary judgment, with Sharon claiming entitlement to half the account and Robilyn seeking all the benefits under the plan as the surviving spouse. The facts were not disputed.

The district court determined "Sharon's waiver in the 1998 divorce action was a full, legal and judicially endorsed disclaimer that terminated her beneficiary

interest in the Plan,"[4] and denied Sharon's motion for summary judgment. The court partially granted Robilyn's motion for summary judgment, ordering UD to pay all remaining plan benefits to Robilyn as default beneficiary but denying her request for attorney fees.

Sharon appeals the beneficiary determination. Robilyn cross-appeals the attorney-fee ruling.

## II. Standard of Review

Interpleader is an equitable action, and our standard of review is de novo. Iowa R. Civ. P. 1.251; *see Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 700 (Iowa 2016). "However, when an equitable proceeding is before us on a motion for summary judgment, our review is for correction of errors at law." *Iowa Arboretum*, 886 N.W.2d at 700. "[I]f the only question is the legal consequence of undisputed facts, it is proper to resolve on summary judgment." *Id.* at 701.

## III. Relevant Documents and Related Law

UD has had a retirement plan in effect since 1921. In 2009, UD adopted a restated version of the plan (2009 Plan). The 2009 Plan was in effect at the time of Richard's death in 2018. The Plan is subject to and governed by ERISA, 29 U.S.C. §§ 1001-4461. ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" described in the statute. 29 U.S.C. § 1144(a).

---

[4] A waiver is "[t]he voluntary relinquishment or abandonment—express or implied—of a legal right or advantage." *Waiver*, Black's Law Dictionary (11th ed. 2019). A disclaimer is defined as "[a] renunciation of one's own legal right or claim" and "[a] writing that contains such a renunciation or repudiation." *Disclaimer*, Black's Law Dictionary (11th ed. 2019). Disclaimer has a specific meaning within the context of an interest in property.

In the record before us is Richard's 1998 "Application for TIAA and CREF Retirement Annuity Contracts," completed approximately five months before his divorce from Sharon, with Sharon designated as primary beneficiary. The form provides, "Under ERISA, each contract gives your spouse the right to an annuity worth 50% of the value of your accumulations at the date of your death. Your spouse must consent below to any beneficiary designation that doesn't meet this requirement." "Sharon Cowart, wife" is the sole beneficiary designated on the form, and no document has been produced with Robilyn's consent to another primary beneficiary. The form does not include information on how to change beneficiaries, what kind of document is needed to effect a disclaimer, if revocation is necessary, or how to revoke the beneficiary designation.

UD was unable to provide any version of the retirement plan from before 2007, and the 2007 document was a "summary plan description" (SPD) instead of the actual plan.[5] The SPD explained the beneficiary of an employee's death benefit: "If you are married at the time of your death, your spouse will be the beneficiary of the entire death benefit unless an election is made to change the beneficiary." The SPD also cautioned, "Since your spouse has certain rights in the death benefit, you should immediately report any change in your marital status to the Administrator." The SPD does not include any information about a divorce revocation provision, nor does it provide information how to otherwise revoke a designated beneficiary.

---

[5] The SPD begins with a proviso: "This SPD describes the Plan's benefits and obligations as contained in the legal Plan document, which governs the operation of the plan. . . . If the non-technical language under this SPD and the technical, legal language of the Plan document conflict, the Plan document always governs."

The earliest written copy of UD's 403(b) plan provided went into effect in 2009 (2009 Plan).[6]  In a response to a request for any version of the plan predating 2009, UD answered in part:

> UD is unable to locate a plan document earlier than 2007 and is not sure if one existed.  Upon information and belief, and consultation with UD's auditors, UD understands that a 403(b) plan would not have been required to have a written plan document in 1998, as the general requirement for a written plan document for 403(b) plans was implemented for plan years beginning after December 31, 2008.

In other words, there are no plan documents we can rely on to establish any terms other than those included in the 2009 Plan.  The 2009 Plan is currently in effect and governs the requirements for claiming and distributing benefits.  Although the 2009 Plan restricts the effectiveness of its provisions to after January 1, 2009, it is the only plan document we have and therefore informs our analysis of pre-2009 actions.

Section 7.05(A) of the 2009 Plan sets requirements for a beneficiary designation:

> A Participant from time to time may designate, in writing, any person(s) . . . contingently or successively, to whom the Vendor will pay all or any portion of the Participant's Vested Account Balance . . . in the event of death. . . .  The Plan will prescribe the form for the Participant's written designation of Beneficiary and, upon the Participant's filing the form with the Plan, the form effectively revokes all designations filed with the Plan prior to that date by the Same Participant.

Immediately after this beneficiary designation provision, the 2009 Plan contains a divorce revocation provision:

---

[6] UD's employee annuity is also referred to as a 403(b) plan.  *See* 26 U.S.C. § 403(b) (establishing tax-deferred retirement accounts for schools and other exempt organizations).

> A divorce decree, or a decree of legal separation, revokes the prior Participant's designation, if any, of his/her spouse or former spouse as his/her Beneficiary unless: (a) the decree or a QDRO provides otherwise; or (b) the Employer provides otherwise in an Addendum. This Section 7.05(A)(1) applies solely to a Participant whose divorce or legal separation becomes effective on or after the date the Employer executes this Plan unless the Plan is a Restated Plan and the prior Plan contained a provision to the same effect.

The record contains no evidence as to whether the plan before 2009 had a divorce-revocation provision.[7]

Unlike the required prescribed form for designation of a beneficiary, the 2009 Plan does not specify a form or prescribe a method for disclaimer by a potential beneficiary.[8] However, the 2009 Plan clearly contemplates disclaimers, as mentioned in the default beneficiary provision:

> If: . . . the Beneficiary (and all contingent or successive Beneficiaries) whom the Participant designates . . . disclaim the Participant's Vested Account Balance and the disclaimers have been accepted as valid under Applicable Law,[9] then the Vendor . . . will distribute the Participant's Vested Account Balance in accordance with Section 6.03 in the following order of priority to:

---

[7] Iowa has a statute voiding a former spouse's beneficiary status by issuance of the dissolution decree. *See* Iowa Code § 598.20B (2018). However, the United States Supreme Court has held ERISA preempts this type of statute and the fiduciary must administer the plan "in accordance with the documents and instruments governing the plan" rather than state statutes revoking a named beneficiary's status by operation of law. *Egelhoff v. Egelhoff*, 532 U.S. 141, 146–48 (2001) (quoting 29 U.S.C. § 1104(a)(1)(D)).

[8] The 2009 Plan requires: "All Plan notices and all Participant or Beneficiary notices, designations, elections, consents or waivers must be in writing . . . and made in a form the Plan specifies or otherwise approves." The 2009 Plan's use of the terms "waiver" and "disclaimer" are distinct and not interchangeable, so by its terms this provision does not apply to disclaimers.

[9] Under the plan, "Applicable Law means the Code, ERISA, USERRA, Treasury, IRS and DOL regulations, rulings, notices, and other written guidance, case law and any other applicable federal, state or local law affecting the Plan and which is binding upon the Plan or upon which the Employer, the Plan Administrator, the Vendor and other Plan fiduciaries may rely in administering the Plan. A specific Plan citation to any Applicable Law includes any successor or modification to the cited provision."

(1) Spouse.  The Participant's surviving spouse . . . .

. . . .

(4) Estate.  The Participant's estate.

What constitutes a disclaimer under the 2009 Plan can be found by following the trail laid by the definition of designated beneficiary: "an individual who is a Beneficiary under Section 7.05 and who is a designated beneficiary under [26 U.S.C.] § 401(a)(9) of the Internal Revenue Code and Treas[ury] Reg[ulation] § 1.401(a)(9)-4, Q&As -4 and -5."  Question 4 under Treasury Regulation 1.401(a)(9)-4 provides in part, "[I]f a person disclaims entitlement to the employee's benefit, pursuant to a disclaimer that satisfies [26 U.S.C.] § 2518 . . . thereby allowing other beneficiaries to receive the benefit in lieu of that person, the disclaiming person is not taken into account in determining the employee's designated beneficiary."  26 C.F.R. § 1.401(a)(9)-4(A-4)(a).  Therefore, a disclaimer for the 2009 Plan is one which meets the requirements of 26 U.S.C. § 2518.

Section 2518 of the Internal Revenue Code sets parameters for disclaimers:

(a) General rule.—For purposes of this subtitle, if a person makes a qualified disclaimer with respect to any interest in property, this subtitle shall apply with respect to such interest as if the interest had never been transferred to such person.

(b) . . . the term "qualified disclaimer" means an irrevocable and unqualified refusal by a person to accept an interest in property but only if—

(1) such refusal is in writing,

(2) such writing is received by the transferor of the interest, his legal representative, or the holder of the legal title to the property to which the interest relates not later than the date which is [nine] months after the later of—

(A) the day on which the transfer creating the interest in such person is made, or

(B) the day on which such person attains age [twenty-one],

(3) such person has not accepted the interest or any of its benefits, and

(4) as a result of such refusal, the interest passes without any direction on the part of the person making the disclaimer and passes either—

(A) to the spouse of the decedent, or

(B) to a person other than the person making the disclaimer.

(c) Other rules.—For purposes of subsection (a)—

(1) Disclaimer of undivided portion of interest.—A disclaimer with respect to an undivided portion of an interest which meets the requirements of the preceding sentence shall be treated as a qualified disclaimer of such portion of the interest.

(2) Powers.—A power with respect to property shall be treated as an interest in such property.

(3) Certain transfers treated as disclaimers.—A written transfer of the transferor's entire interest in the property—

(A) which meets requirements similar to the requirements of paragraphs (2) and (3) of subsection (b), and

(B) which is to a person or persons who would have received the property had the transferor made a qualified disclaimer (within the meaning of subsection (b)),

shall be treated as a qualified disclaimer.

26 U.S.C. § 2518; *see also* 26 C.F.R. § 25.2518-2 (including "irrevocable and unqualified" as an element of a qualified disclaimer).

**IV. Analysis**

**A. Parties' positions.** Sharon asserts the court erred in not applying the "plan documents rule" established in *Kennedy* and subsequent cases and the divorce decree cannot be considered in determining her beneficiary interest even absent a plan provision setting forth disclaimer procedures.

Robilyn replies the "plan documents rule" is inapplicable due to the lack of plan documents at the time of the stipulation. She further asserts, as alternate grounds for affirmance, the SPD invalidated the 1998 Designation, she did not

consent to a non-spouse beneficiary as required under the 2009 Plan, and Sharon's 2018 disclaimer was sufficient under the "plan documents rule." Robilyn also argues she was entitled to reasonable attorney fees under ERISA.

We may affirm the district court's ruling on any ground urged below, whether or not it formed the basis for the court's original ruling. *See DeVoss v. State*, 648 N.W.2d 56, 62–63 (Iowa 2002).

**B. Plan documents rule.** The "plan documents rule" derives from the United States Supreme Court's decision *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 555 U.S. 285 (2009). In *Kennedy*, the Supreme Court "granted certiorari to resolve a split among the Courts of Appeals and State Supreme Courts over a divorced spouse's ability to waive pension plan benefits through a divorce decree not amounting to a [qualified domestic relation order]." 555 U.S. at 291. The Court considered whether a waiver embodied in a divorce decree should be honored by a plan administrator when determining the appropriate recipient of benefits of a former spouse. 555 U.S. at 288. In the relevant decree, the spouse was "divested of all right, title, interest, and claim in and to . . . [a]ny and all sums . . . the proceeds [from], and any other rights related to any . . . retirement plan." *Id.* at 289 (alterations in original). The *Kennedy* Court determined the waiver in the decree was a document with independent significance under state law and to which federal law could be applied. *Id.* at 299.[10]

---

[10] The *Kennedy* court also determined the divorce-decree waiver is not void as an impermissible assignment or alienation of plan benefits under ERISA section 1056(d)(1). 555 U.S. at 297–99.

The Court looked to other requirements under ERISA and the plan's documents for its analysis. *Id.* at 299–300. The plan in *Kennedy* required "[a]ll authorizations, designations and requests concerning the Plan [to] be made by employees in the manner prescribed by the [plan administrator]" and provided forms for any such changes. *Id.* at 288. The plan provided for a waiver of benefits by a beneficiary in the form of a "'qualified disclaimer' . . . as defined under the Tax Code." *Id.* at 289.[11] The Court determined the plan's documents and instruments preempt a divorced spouse's waiver of plan benefits for purposes of plan administration. *Id.* at 303–04.

The Court opted for "a straightforward rule of hewing to the directives of the plan documents that lets employers 'establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Id.* at 300 (alteration in original) (citation omitted). While the beneficiary designation in *Kennedy* was made as required under the plan's documents, the ex-spouse's waiver was not. *Id.* at 304. The Court's ruling left open questions "about a waiver's effect in circumstances in which it is consistent with plan documents," "whether the Estate could have brought an action in state or federal court against [the ex-spouse] to obtain the benefits after they were distributed," and what happens in "a situation in which the plan documents provide no means for a beneficiary to renounce an interest in benefits." *Id.* at 299 n.10, 303 n.13.

---

[11] The estate in *Kennedy* did not assert, and the Court did not decide, whether the waiver was a valid disclaimer under the terms of the plan. 555 U.S. at 303 n.13.

This case shows many similarities to *Kennedy*. *See id.* at 289–90. The district court found there were no plan documents in effect at the time of the divorce and therefore fell within an exception for when the plan documents did not provide a means to renounce an interest in benefits. However, the plan administrator was distributing benefits as provided in the 2009 Plan in effect at the time of Richard's death. As in *Kennedy*, the plan documents "provide that the plan administrator will pay benefits to a participant's designated beneficiary, with designations and changes to be made in a particular way." *Id.* at 304.

While the divorce revocation provision was in effect at the time of Richard's death, the provision "applies solely to a Participant whose divorce or legal separation becomes effective on or after the date the Employer executes this Plan unless the Plan is a Restated Plan and the prior Plan contained a provision to the same effect." Richard and Sharon divorced in 1998, long before the 2009 Plan was executed. The 2009 Plan is a restated plan, yet there is no evidence in the record the provision existed in prior versions. Sharon presented an admission from UD it had no evidence a prior version contained a divorce revocation provision. We agree with the district court the provision "by its express terms does not apply to Richard."

The 2009 Plan requires beneficiary designations be done using a prescribed form. Given the actions of TIAA and UD, we presume the 1998 designation meets the plan's requirements.[12] As the party seeking to use the

---

[12] Robilyn asserts no proof established the 1998 designation was authorized by the plan. Without evidence indicating otherwise, we accept the form provided by UD as valid under the plan.

waiver, the burden was on Robilyn to show the 1998 divorce stipulation meets the statutory requirements of a qualified disclaimer as required under the 2009 Plan. She made no effort to do so and we assume without deciding it does not meet the requirements. Therefore, *Kennedy* applies and the decretal waiver does not divest Sharon of her rights under ERISA.[13]

As an alternative, Robilyn argues the SPD divested the designated beneficiary (Sharon), as it required a non-spouse beneficiary designation include spousal consent (Robilyn). ERISA and case law both distinguish between an SPD and enforceable plan documents. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 436–38 (2011). An SPD "provide[s] communication with beneficiaries *about* the plan, but [its] statements do not themselves constitute the *terms* of the plan." *Id.* at 438. The SPD itself notes it is not the plan document, but merely describes the "benefits and obligations as contained in the legal Plan document." The 2007 SPD cannot

---

[13] Even if the divorce stipulation is not a qualified disclaimer by a designated beneficiary under ERISA, it may be a potential basis for a claim by Richard's estate against Sharon for the distributed funds. *See Kennedy*, 555 U.S. at 299 n.10; *see also, e.g.*, *Andochick v. Byrd*, 709 F.3d 296, 301 (4th Cir. 2013) ("ERISA does not preempt post-distribution suits against ERISA beneficiaries. We note that in reaching this conclusion, we adopt the same view as every published appellate opinion to address the question."); *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 136–37 (3d Cir. 2012) (holding while the plan administrator must distribute benefits to the named beneficiary despite divorce, any post-distribution challenge to the beneficiary's right to the funds due to her common law waiver would be litigated as an ordinary contract dispute); *Rice v. Webb*, 844 N.W.2d 290, 300–01 (Neb. 2014) (finding in a proceeding brought by decedent's estate a former spouse was obligated to withdraw claim for life insurance proceeds based on divorce decree's property settlement agreement); *In re Est. of Easterday*, 209 A.3d 331, 346 (Pa. 2019) ("ERISA does not preempt a state law breach of contract claim to recover funds that were paid pursuant to an ERISA-qualified employee benefit plan.").

divest Sharon of her beneficiary designation support from a provision in the actual plan documents.

Robilyn also suggests Sharon's July 2018 letter to TIAA constituted a disclaimer of the benefits. Sharon responds she did not complete the documents required for the disclaimer and revoked any disclaimer with her September letter. She did not produce any uncompleted plan documents required to execute a disclaimer or even a notification from TIAA the letter was insufficient as a disclaimer under the plan.

As discussed above, nothing in the plan documents indicates a required form or specific process to disclaim benefits aside from the requirements of 26 U.S.C. § 2518. Thus, we evaluate the letter in the context of the elements of a qualified disclaimer under 26 U.S.C. § 2518. Sharon's letter to TIAA was in writing and delivered to the plan administrator within the statutory time period, Sharon had not accepted any of the disclaimed interest or its benefits, and the interest would pass without direction to the decedent's spouse. *See* 26 U.S.C. § 2518(b)(1)-(4); 26 C.F.R. § 25.2518-2(a)(2)–(5). The letter did not include any qualifications on the disclaimer. *See* 26 C.F.R. § 25.2518-2(a)(1) ("The disclaimer must be irrevocable and unqualified."). The only requirement in question is whether the disclaimer was irrevocable. *See id.*

We have been unable to identify controlling federal law regarding when a disclaimer becomes irrevocable under 26 U.S.C. § 2518. Thus, we look to our state law as other applicable law to fill in where federal law is silent—in this case to determine when the disclaimer is irrevocable.

Under the Iowa Uniform Disclaimer of Property Interest Act, Iowa Code chapter 633E, the requirements for a disclaimer of interest generally mirror the requirements under 26 U.S.C. § 2518. However, the Iowa statute provides an explanation the federal law does not: "A disclaimer becomes irrevocable when it is delivered or filed pursuant to section 633E . . . ." Iowa Code § 633E.5(5). "[D]elivery of a disclaimer may be effected by personal delivery, first class mail, or any other method likely to result in its receipt." *Id.* § 633E.12(2). Sharon's disclaimer became irrevocable when she mailed the disclaimer in July 2018. Therefore, the disclaimer was effective, and the interest at issue passes to Robilyn via the default beneficiary provision of the 2009 Plan. We affirm the district court's ruling Robilyn is entitled to Richard's entire interest as his default beneficiary under the 2009 Plan.

**C. Attorney Fees.** In her cross-appeal, Robilyn challenges the district court's denial of her request for attorney fees under 29 U.S.C. § 1132(g)(1).[14] The district court noted the action was brought as an interpleader action, not under ERISA, and therefore attorney fees were not recoverable under the statutory provision.[15] We discern no legal error in the district court's decision on this issue and affirm.

**AFFIRMED.**

---

[14] "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

[15] Robilyn briefly requested reasonable trial and appellate attorney fees, but did not cite any authority or file an attorney fee affidavit. "Failure to cite authority in support of an issue may be deemed waiver of that issue." Iowa R. App. P. 6.903(2)(g)(3). We deem this issue waived and deny Robilyn's request.