*In the Matter of Brenda Batchelor*, No. 490, September Term, 2022. Opinion by Zarnoch, J.

**FEDERAL PREEMPTION –** If a state law, practice, or court action conflicts with federal law, it must give way.

**FEDERAL PREEMPTION –** The Federal Employees' Retirement System Act (FERSA) preempts an estate's state law claim regarding distribution from a deceased federal employee's Thrift Savings Plan (TSP). Even though the husband waived his interest in the TSP in a divorce proceeding, his ex-wife did not remove him as the sole beneficiary of the TSP. FERSA contains an order of precedence provision that requires benefits to the designated beneficiary and bars recovery by anyone else.

Circuit Court for Montgomery County
Case No. 484282V

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 490

September Term, 2022

IN THE MATTER OF BRENDA
BATCHELOR

Nazarian,
Albright,
Zarnoch, Robert A.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by Zarnoch, J.
Dissenting Opinion by Nazarian, J.

Filed: February 28, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

It matters not whether a state law, practice, or court action is fair, equitable, utterly reasonable, supported by cogent policy arguments, and protective of important state interests. If it conflicts with federal law, it must give way. This is such a case.

This appeal stems from a dispute between Brenda Batchelor, personal representative of the estate of Bonnie Campbell (hereinafter the "Estate"), and Ms. Campbell's former husband, Michael Campbell, over the proceeds of a Thrift Savings Plan ("TSP") that Ms. Campbell had established under the Federal Employees' Retirement System Act of 1986 ("FERSA") and that named Mr. Campbell as the sole beneficiary. In 2010, Mr. and Ms. Campbell were divorced, and, as part of that divorce, they entered into a property settlement agreement (the "Settlement Agreement") in which Mr. Campbell purportedly waived all rights to the proceeds of Ms. Campbell's TSP account. Despite that agreement, Ms. Campbell never removed Mr. Campbell as the sole beneficiary of the TSP account. In 2019, Ms. Campbell passed away, and the entirety of the proceeds from the TSP account were subsequently distributed to Mr. Campbell. The Estate thereafter filed, in the Circuit Court for Montgomery County, a civil complaint against Mr. Campbell, claiming that, under the terms of the Settlement Agreement, the proceeds of the TSP account should have gone to the Estate. Mr. Campbell filed a motion to dismiss, arguing that the Estate had failed to state a claim upon which relief could be granted because, pursuant to FERSA, Mr. Campbell, as the named beneficiary, was entitled to sole and exclusive use of the TSP proceeds. The Estate opposed the motion to dismiss and filed a motion for summary judgment. Following a hearing, the circuit court denied Mr. Campbell's motion to dismiss

and granted, in part, the Estate's motion for summary judgment. Mr. Campbell noted this appeal, raising a single issue:

> Did the circuit court err in determining that the Estate's claims were not preempted by FERSA?

For reasons to follow, we hold that the Estate's claims were preempted by FERSA and that, consequently, the circuit court erred in denying Mr. Campbell's motion to dismiss. We therefore reverse the court's judgment and remand with instructions to dismiss the Estate's complaint.

## BACKGROUND

Mr. and Ms. Campbell were married in 1999. At some point prior to or during the marriage, Ms. Campbell opened and began funding a TSP, a form of retirement plan offered to certain federal employees. 5 U.S.C.A. § 8432. In 2002, Ms. Campbell named Mr. Campbell as the sole beneficiary of her TSP account.

In 2009, Mr. and Ms. Campbell separated. The following year, they entered into the Settlement Agreement. That agreement included a provision in which the parties agreed to waive any right to the other party's retirement assets.

In July 2010, Mr. and Ms. Campbell were divorced by way of judgment entered in the circuit court. The Settlement Agreement was incorporated, but not merged, into the divorce judgment. It does not appear from the record, however, that Ms. Campbell ever

2

changed her beneficiary designation or otherwise informed the appropriate authority about the Settlement Agreement.[1]

In August 2019, Ms. Campbell passed away. At the time of Ms. Campbell's death, her TSP had not been distributed and was valued at $717,030.29. Shortly thereafter, Mr. Campbell applied to receive those funds as the designated beneficiary. Said funds were ultimately disbursed to Mr. Campbell.

In December 2020, Ms. Campbell's estate filed a civil suit against Mr. Campbell for specific performance, breach of contract, and conversion. The Estate alleged that Mr. Campbell should not have received the TSP funds under the terms of the Settlement Agreement. The Estate argued that Mr. Campbell had waived his right to the TSP funds and that, consequently, he should be required to repay those funds to Ms. Campbell by way of her estate.

Mr. Campbell filed a motion to dismiss the Estate's complaint. He maintained that, as the named beneficiary of the TSP account, he was entitled to the funds and that the Estate's complaint was preempted by FERSA's statutory scheme concerning the distribution of TSP funds.

The Estate opposed the motion and subsequently filed a motion for summary judgment on the claims set forth in the complaint. In support, the Estate cited *Andochick v. Byrd*, 709 F.3d 296 (4th Cir. 2013), a case in which the United States Court of Appeals

---

[1] The record includes evidence suggesting that, following the divorce, Ms. Campbell received notices regarding changing her beneficiary. The record does not disclose why Ms. Campbell did not respond to those notices.

3

for the Fourth Circuit held that a post-distribution lawsuit regarding funds distributed to a beneficiary under the Employee Retirement Income Security Act of 1974 ("ERISA") was permissible based on the beneficiary's prior waiver of those funds via a marital settlement agreement. *Id.* at 301.

Following a hearing, the circuit court denied Mr. Campbell's motion to dismiss and granted, in part, the Estate's motion for summary judgment. The court, citing *Andochick*, determined that the Estate's complaint was not preempted by federal law.[2] The court also determined that the Estate was entitled to summary judgment on its breach of contract claim because it was undisputed that Mr. Campbell had breached the terms of the Settlement Agreement by obtaining and then refusing to relinquish the TSP funds following Ms. Campbell's death. The court granted judgment in favor of the Estate in the amount of $734,334.35.

Mr. Campbell thereafter noted this timely appeal. Additional facts will be supplied as needed below.

## DISCUSSION

Mr. Campbell argues that the circuit court erred in denying his motion to dismiss. He maintains that FERSA requires that the TSP funds be paid to him as the named beneficiary and that, in turn, FERSA bars recovery by any other individual. He further maintains that, under FERSA, the TSP funds are his sole property and are not subject to

---

[2] With little comment, the circuit court declined to apply the Tenth Circuit case that reached the opposite conclusion with respect to FERSA – *Evans v. Diamond*, 957 F.3d 1095 (10th Cir. 2020).

4

attack by the Estate. He argues, therefore, that any right of action the Estate may have to enforce the Settlement Agreement pursuant to Maryland contract law conflicts with and is preempted by FERSA. Mr. Campbell also asserts that the circuit court's reliance on *Andochick* was misplaced because ERISA's statutory scheme is markedly different from FERSA's statutory scheme.

The Estate contends that the circuit court's decision was legally correct. Citing *Andochick*, the Estate argues that "[t]his jurisdiction has already determined that ERISA does not preempt a post-distribution election different from what was contained in an ERISA beneficiary designation." The Estate insists that that determination should control our decision here given the "substantial[] similar[ities]" between ERISA and FERSA. The Estate argues further that any beneficiary designation rules established in FERSA have no impact on post-distribution agreements like the one in the instant case because those rules were designed and implemented to simplify the administration of an undistributed TSP, not to prevent recovery following distribution. The Estate asserts that the Supreme Court cases cited by Mr. Campbell are therefore inapposite because each of those cases involved a pre-distribution lawsuit.

**STANDARD OF REVIEW**

The denial of a motion to dismiss is a matter of law that we review *de novo*. *Greater Towson Council of Cmty. Ass'ns v. DMS Dev., LLC*, 234 Md. App. 388, 408 (2017). In making that determination, we "assume the truth of factual allegations made in the complaint and draw all reasonable inferences from those allegations in favor of the plaintiff." *Ceccone v. Carroll Home Servs., LLC*, 454 Md. 680, 691 (2017). "Dismissal is

5

proper only if the complaint would fail to provide the plaintiff with a judicial remedy." *Holzheid v. Comptroller of Treasury of Maryland*, 240 Md. App. 371, 387 (2019) (quotation marks and citations omitted).

## ANALYSIS

Under the Supremacy Clause of the United States Constitution, when federal law and state law are in conflict or have cross-purposes, federal law will preempt state law. *Chateau Foghorn LP v. Hosford*, 455 Md. 462, 483 (2017). There are at least three types of preemption: express, field, and conflict. *Id.* Relevant here is the third type, conflict preemption.[3]

Conflict preemption occurs when "the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]'" *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Whether such a conflict exists is determined by examining Congress's purpose in enacting the federal statute at issue. *Chateau Foghorn*, 455 Md. at 485. And that intent is discerned primarily by examining the language of the federal statute, the statutory framework surrounding the statute, and, if applicable, the relevant regulatory scheme. *Id.*

That said, "when assessing congressional intent and weighing whether a state law poses an obstacle to congressional purposes or objectives, courts must also apply a presumption that Congress did not intend to preempt state law." *Id.* at 486. The

---

[3] The parties agree that conflict preemption is the applicable type of preemption in this case.

presumption against preemption carries heightened force in areas traditionally within the domain of state law, such as domestic relations. *Id.* at 487. Thus, when a state domestic relations law purportedly conflicts with federal law, the state law "must do major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law will be overridden[.]" *Hillman v. Maretta*, 569 U.S. 483, 490-91 (2013) (quotation marks and citation omitted). Nevertheless, laws traditionally within the domain of the states, including domestic relations laws, are "not entirely insulated from conflict pre-emption principles, and . . . must give way to clearly conflicting federal enactments." *Id.* at 491 (quotation marks and citation omitted).

"Whether a federal statute preempts Maryland law is a question of law that this Court reviews *de novo*." *United Food & Com. Workers Int'l Union v. Wal-Mart Stores, Inc.*, 453 Md. 482, 494 (2017). Similarly, questions of statutory interpretation are reviewed *de novo*. *Elsberry v. Stanley Martin Cos., LLC*, 482 Md. 159, 178 (2022).

### *I. FERSA*

FERSA, which governs the TSP at issue here, is codified in Chapter 84 of Title 5 of the United States Code. Under that statutory scheme, certain federal employees may open a TSP by contributing to the Thrift Savings Fund administered by the Federal Retirement Thrift Investment Board. 5 U.S.C.A. §§ 8432, 8472; *see also* 5 C.F.R. § 1600.1, *et seq.* Once a TSP is opened, the account owner has the exclusive right to "designate one or more beneficiaries for his or her TSP account." 5 C.F.R. § 1651.3(a); *see also* 5 U.S.C.A. § 8424(d). If a valid beneficiary has been designated, that designation remains in effect until properly changed by the TSP account holder. 5 C.F.R. § 1651.3(a); 5 U.S.C.A. § 8424(d).

"To change a designation of beneficiary, the participant must submit to the TSP record keeper a new TSP designation of beneficiary meeting the requirements of § 1651.3 to the TSP record keeper." 5 C.F.R. § 1651.4(a). "A participant cannot use a will to change a TSP designation of beneficiary." 5 C.F.R. § 1651.4(c). Moreover, absent certain exceptions not relevant here, "sums in the Thrift Savings Fund may not be assigned or alienated and are not subject to execution, levy, attachment, garnishment, or other legal process." 5 U.S.C.A. § 8437(e)(2).

If a TSP account holder subsequently separates from employment, that individual may elect to withdraw the balance of his or her TSP account in the form of an annuity or some combination of payments. 5 U.S.C.A. § 8433. If, however, the account holder dies without making such an election, "an amount equal to the value of that individual's account (as of death) shall, subject to any decree, order, or agreement referred to in section 8435(c)(2) of this title be paid in a manner consistent with section 8424(d) of this title." 5 U.S.C.A. § 8433(e)(1). Section 8424(d) states, in pertinent part, that payment must be made according to an "order of precedence," and that such payment "bars recovery by any other individual[.]" 5 U.S.C.A. § 8424(d). That order of precedence is as follows:

> First, to the beneficiary or beneficiaries designated by the employee or Member in a signed and witnessed writing received in the Office before the death of such employee or Member. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

> Second, if there is no designated beneficiary, to the widow or widower of the employee or Member.

> Third, if none of the above, to the child or children of the employee or Member and descendants of deceased children by representation.

8

Fourth, if none of the above, to the parents of the employee or Member or the survivor of them.

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee or Member.

Sixth, if none of the above, to such other next of kin of the employee or Member as the Office determines to be entitled under the laws of the domicile of the employee or Member at the date of death of the employee or Member.

*Id.*

A similar payment method can be found in § 1651 of Title 5 of the Code of Federal Regulations, which governs the payment of death benefits by the Federal Retirement Thrift Investment Board. Under that regulatory scheme, the account balance of a deceased TSP participant must be paid, subject to certain limited exceptions, as a death benefit pursuant to the order of precedence set forth in 5 U.S.C.A. § 8424(d). 5 C.F.R. §§ 1651.1-1651.2.

As noted, 5 U.S.C.A. § 8433 states that, while payments must be made according to the order of precedence set forth in § 8424(d), such payments are "subject to any decree, order, or agreement referred to in section 8435(c)(2) of this title[.]" 5 U.S.C.A. § 8433(e)(1). Section 8435 provides certain protections for an account holder's spouse or former spouse in the event that an election or change of election is made. Specifically, § 8435(c) renders ineffective any election or change of election if "the election, change, or transfer conflicts with any court decree, order, or agreement described in paragraph (2)." 5 U.S.C.A. § 8435(c)(1). Paragraph (2) of that subsection states:

**(2)** A court decree, order, or agreement referred to in paragraph (1) is, with respect to an employee or Member (or former employee or Member), a court decree of divorce, annulment, or legal separation issued in the case of such

9

employee or Member (or former employee or Member) and any former spouse of the employee or Member (or former employee or Member) or any court order or court-approved property settlement agreement incident to such decree if –

> **(A)** the decree, order, or agreement expressly relates to any portion of the balance in the employee's or Member's (or former employee's or Member's) account; and
>
> **(B)** notice of the decree, order, or agreement was received by the Executive Director before –
>
>> **(i)** the date on which payment is made, or
>>
>> **(ii)** in the case of an annuity, the date on which an annuity contract is purchased to provide for the annuity,
>
> in accordance with the election, change, or contribution referred to in paragraph (1).

5 U.S.C.A. § 8435(c)(2).

FERSA includes a similar requirement in 5 U.S.C.A. § 8467, which governs payments that may be the subject of a court order. Under that section, payments that would have otherwise gone to an employee shall be made to another person if expressly provided for in the terms of "any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation[.]" 5 U.S.C.A. § 8467(a)(1). That subsection, however, applies "only to payments made . . . after the date on which the Office or the Executive Director (as the case may be) receives written notice of such decree, order, other legal process, or agreement, and such additional information and documentation as the Office or the Executive Director may require." 5 U.S.C.A. § 8467(b).

10

## II. Relevant Law

Here, it is undisputed that Mr. Campbell was a properly named beneficiary of Ms. Campbell's TSP account and that Ms. Campbell never altered that designation under FERSA or otherwise notified any relevant authority about the Settlement Agreement. It is also undisputed that, upon Ms. Campbell's death, the balance of her TSP account was properly paid to Mr. Campbell as the named beneficiary pursuant to FERSA. The sole question here, then, is whether FERSA preempts a breach of contract (or similar) state law claim to recover funds that have already been distributed to a beneficiary, where the beneficiary had allegedly waived his right to the funds in a property settlement agreement and where the account holder had subsequently failed to inform the appropriate authority about the settlement agreement. Although we are unaware of any controlling precedent concerning that exact issue, there are cases that involve similar statutory provisions and facts.

### A. *Wissner v. Wissner*

In *Wissner v. Wissner*, 338 U.S. 655 (1950), the United States Supreme Court considered whether the proceeds from an insurance policy created pursuant to federal law could be recovered under California's community property laws. In that case, Leonard Wissner, a married serviceman, had subscribed to an insurance policy pursuant to the National Service Life Insurance Act of 1940 ("NSLIA"). *Id.* at 656-57. Sometime later, Wissner and his wife became estranged, and Wissner named his mother as the principal beneficiary of his policy. *Id.* at 657. Two years later Wissner died, and the United States Veterans' Administration began paying monthly proceeds from the insurance policy to

11

Wissner's mother. *Id.* Sometime after that, Wissner's widow, a resident of California, brought a state action claiming that, under California's community property law, she was entitled to one-half of the proceeds of the policy. *Id.* The California court agreed and entered judgment for the widow for one-half of the amount already paid and one-half of all future payments. *Id.* at 658. The case was appealed to California's state appellate court, which affirmed. *Id.*

After granting *certiorari*, the United States Supreme Court reversed, holding that the California court's decision was erroneous because California's community property law was preempted by federal law. *Id.* at 658-61. The Court explained that, under NSLIA's statutory scheme, Wissner had the exclusive right to designate and change a beneficiary. *Id.* at 658. The Court reasoned that Congress, in enacting that scheme, had "spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other." *Id.* The Court concluded that the California court's judgment could not stand because, "[w]hether directed at the very money received from the Government or an equivalent amount, the judgment below nullifies the soldier's choice and frustrates the deliberate purpose of Congress." *Id.* at 659.

The Court also held that the California court's decision was deficient because it ran contrary to NSLIA's anti-attachment provision, which stated that payments to a beneficiary "shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." *Id.* (quotation marks and citation omitted). The Court explained that, by constructing the NSLIA in such a manner, Congress had declared "that the chosen

12

beneficiary of the life insurance policy shall be, during life, the sole owner of the proceeds."
*Id.* at 660.

### B. Ridgway v. Ridgway

In *Ridgway v. Ridgeway*, 454 U.S. 46 (1981), the United States Supreme Court again considered whether insurance proceeds from a policy created pursuant to federal law could be recovered under state law. There, a sergeant in the United States Army, Richard Ridgway, had divorced his wife, April, with whom he had three children. *Id*. at 48. As part of the divorce, the parties agreed that Ridgway would obtain and keep a life insurance policy for the benefit of his children. *Id.* Ridgway procured such a policy pursuant to the Servicemember's Group Life Insurance Act of 1965 ("SGLIA"). *Id.* at 47-48. Shortly after the divorce, Ridgway married his second wife, Donna, and subsequently named her as the beneficiary of his life insurance policy. *Id.* at 48. Ridgway died the following year, and both April and Donna filed claims for the proceeds of the policy. *Id.* at 49. In addition, April, a resident of Maine, brought a state action asking the Maine court to enter a declaratory judgment that the insurance proceeds belonged to her children. *Id.* April also asked the Maine court to impose a constructive trust for the benefit of her children on any policy proceeds paid to Donna. *Id.* Ultimately, the Maine court rejected April's claims, finding that they were preempted by the SGLIA. *Id.* April appealed, and the Supreme Judicial Court of Maine reversed and directed the trial court to enter an order naming Donna as constructive trustee of the proceeds of the insurance policy. *Id.* at 49-50.

After granting *certiorari*, the United States Supreme Court reversed the Supreme Judicial Court of Maine's decision and held that April's claims were preempted by federal

13

law. *Id.* at 63. In so doing, the Court noted that the SGLIA included an "order of precedence" by which policy proceeds were to be paid, with named beneficiaries given first priority. *Id.* at 52. The Court also noted that the SGLIA had an "anti-attachment" provision, which shielded payments from taxation and claims by creditors and stated that payments "shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." *Id.* at 52-53 (quotation marks and citation omitted). Finally, the Court noted that the Administrator of Veterans' Affairs had promulgated certain regulations pursuant to the SGLIA that allowed the policy holder complete autonomy to name a beneficiary and that provided specific steps that had to be taken in order for a beneficiary to be named and later changed, if desired. *Id.* at 53.

Based on those statutory and regulatory enactments, the Court held that payment of Ridgway's policy proceeds to anyone other than Donna, the named beneficiary, whether directly or by way of a constructive trust, ran afoul of Congress's clear intent under the SGLIA. *Id.* at 53-62. Citing *Wissner*, the Court concluded that, because the SGLIA and its accompanying regulatory scheme granted a policy holder the right to name and alter a beneficiary, Congress had directed "that the proceeds belong to the named beneficiary and no other." *Id.* at 55-57 (quotation marks and citation omitted). The Court also concluded that the creation of a constructive trust after the proceeds had been received by the beneficiary would violate SGLIA's anti-attachment provision. *Id.* at 60-61. The Court explained that permitting such a trust would constitute a "seizure" of the beneficiary's rightful property and would "fail[] to give effect to the unqualified sweep of the federal

14

statute." *Id.* at 61. The Court found that there was "nothing to indicate that Congress intended to exempt claims based on property settlement agreements from the strong language of the anti-attachment provision." *Id.*

### C. Hillman v. Maretta

The Supreme Court revisited the issue in *Hillman v. Maretta*, *supra*. There, a federal employee had purchased a life insurance policy pursuant to the Federal Employees' Group Life Insurance Act of 1954 ("FEGLIA") and named his wife, Judy Maretta, as the beneficiary. 569 U.S. at 488-89. The employee later divorced Maretta and married another woman, Jacqueline Hillman, but the employee never changed his beneficiary designation. *Id.* When the employee died, benefits were paid to Maretta as the named beneficiary. *Id.* at 489. Hillman later filed suit in Virginia pursuant to §§ 20-111.1(A) and 20-111.1(D) of the Virginia Code. *Id.* Section A of that statute stated that a divorce or annulment revoked a beneficiary designation contained in a life insurance contract. *Id.* at 488. Section D stated that, in the event that Section A was preempted by federal law, a former spouse would be liable to the current spouse for any monies to which the current spouse should have been entitled under Section A. *Id.* Ultimately, the Virginia court granted judgment in favor of Hillman, finding Maretta liable to Hillman for the proceeds of the insurance policy that were paid. *Id.* at 489. After Maretta appealed, the Virginia Supreme Court reversed and held that the Virginia statute was preempted by FEGLIA. *Id.*

The United States Supreme Court later granted *certiorari* and affirmed. *Id.* at 489-90. Citing *Wissner* and *Ridgway*, the Court noted that, like the statutory schemes at issue in those cases, FEGLIA included an "order of precedence" as to how benefits were to be

15

paid and gave highest priority to an insured's designated beneficiary. *Id.* at 493-94. The Court found that Section D of the Virginia statute directly interfered with FEGLIA because the Virginia statute "directs that the proceeds actually 'belong' to someone other than the named beneficiary by creating a cause of action for their recovery by a third party." *Id.* at 494. The Court reasoned that it was immaterial whether the state law required the transfer of proceeds, as set forth in Section A, or created a cause of action, as set forth in Section D; "[i]n either case, state law displaces the beneficiary selected by the insured in accordance with FEGLIA and places someone else in her stead." *Id.* at 494. The Court went on to explain that, while an alternative holding may seem reasonable under the circumstances, such a holding would not be consistent with Congress's intent:

> One can imagine plausible reasons to favor a different policy. Many employees perhaps neglect to update their beneficiary designations after a change in marital status. As a result, a legislature could have thought that a default rule providing that insurance proceeds accrue to a widow or widower, and not a named beneficiary, would be more likely to align with most people's intentions. Or, similarly, a legislature might have reasonably believed that an employee's will is more reliable evidence of his intent than a beneficiary designation form executed years earlier.

> But that is not the judgment Congress made. Rather than draw an inference about an employee's probable intent from a range of sources, Congress established a clear and predictable procedure for an employee to indicate who the intended beneficiary of his life insurance shall be. Like the statutes at issue in *Ridgway* and *Wissner*, FEGLIA evinces Congress' decision to accord federal employees an unfettered "freedom of choice" in selecting the beneficiary of the insurance proceeds and to ensure the proceeds would actually "belong" to that beneficiary. *Ridgway*, 454 U.S. at 56. An employee's ability to name a beneficiary acts as a "guarantee of the complete and full performance of the contract to the exclusion of conflicting claims." *Wissner*, 338 U.S. at 660. With that promise comes the expectation that the insurance proceeds will be paid to the named beneficiary and that the beneficiary can use them.

16

*Id.* at 494-95 (internal footnote omitted).

The Court then explained that further confirmation of Congress's intent could be found in an exception contained in FEGLIA's order of precedence, which stated that payments that otherwise would be paid under the order of precedence "shall be paid to another person 'if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation.'" *Id.* at 495-96 (citation omitted). The Court noted that FEGLIA also included an express provision that stated that that exception only applied if the "'decree, order, or agreement . . . is received, before the date of the covered employee's death, by the employing agency.'" *Id.* at 496 (citation omitted). The Court found that that limited exception ensured "that any departure from the beneficiary designation is managed within, not outside, the federal system." *Id.* The Court concluded that allowing States to make alternative distributions would transform FEGLIA's narrow exception to its order of precedence "into a general license for state law to override FEGLIA." *Id.*

### D. Evans v. Diamond

Recently, in *Evans v. Diamond*, 957 F.3d 1098 (10th Cir. 2020), the United States Court of Appeals for the Tenth Circuit considered an issue almost identical to the one presented in the instant case. There, a TSP account holder had named his wife, Betty Diamond, as the beneficiary. *Id.* at 1099. The couple later divorced, and, as part of that divorce, they entered into a settlement agreement whereby Ms. Diamond agreed to waive any right to the TSP account. *Id.* Despite that agreement, the account holder never removed Ms. Diamond as the named beneficiary. *Id.* When the account holder later died,

17

his estate asked Ms. Diamond to waive her interest in the TSP account, but she refused. *Id.* The estate subsequently sued Ms. Diamond in Utah state court, seeking declaratory relief and claiming breach of contract. *Id.* After Ms. Diamond removed the case to federal district court, she filed a motion to dismiss, arguing that the estate's state law claims were preempted by FERSA. *Id.* The district court agreed, and the case was dismissed. *Id.* The estate thereafter noted an appeal to the United States Court of Appeals for the Tenth Circuit. *Id.* at 1099-1100.

The Tenth Circuit ultimately affirmed, holding that FERSA preempted any conflicting Utah state property rights. *Id.* In so doing, the Tenth Circuit discussed *Wissner*, *Ridgeway*, and *Hillman*, noting the similarities between those cases and FERSA. *Id.* at 1100-05. The Tenth Circuit noted that "FERSA's order-of-precedence provision clearly and unequivocally states that any balance in an employee's TSP account at the time of his death shall be paid to his designated beneficiary." *Id.* at 1103. The Tenth Circuit explained that that provision was "not materially different from the order-of-precedence provisions examined by the [Supreme] Court in *Ridgeway* and *Hillman*." *Id.* The Tenth Circuit explained further that FERSA contained additional language suggesting that Congress intended for TSP proceeds to go to the named beneficiary "free and clear of any claim by any other individual or entity." *Id.* That additional language included FERSA's anti-attachment provision, which stated that proceeds from a TSP account were not subject to execution or attachment, and FERSA's express requirement that payment to a TSP beneficiary prohibits recovery by any other individual. *Id.*

18

The Tenth Circuit also rejected the estate's argument that FERSA did not preempt post-distribution lawsuits. *Id.* at 1104-05. The Tenth Circuit concluded that, because FERSA's order-of-precedence provision was materially identical to the one at issue in *Hillman*, the holding in that case regarding post-distribution lawsuits was dispositive. *Id.* at 1105. The Tenth Circuit explained that an order pursuant to state law requiring Ms. Diamond to hold distributed proceeds for the benefit of the estate was "the economic equivalent of an order directing that those monies be distributed to the [e]state." *Id.* The Tenth Circuit reasoned that such an order "would interfere with the express federal interest of ensuring that Diamond, the properly designated beneficiary, retain the entirety of the distribution she receives[.]" *Id.*

### III. The Instant Case

Applying the above authority to the instant case compels the conclusion that the Estate's claims regarding the disputed TSP funds were preempted by FERSA. Like the NSLIA, FERSA grants an account holder the exclusive right to designate a beneficiary. 5 U.S.C.A. § 8424(d). In including that provision, Congress signaled "with force and clarity" that the proceeds of the TSP "belong[ed]" to that beneficiary "and no other." *Wissner*, 338 U.S. at 658. Allowing the Estate to recover those funds from Mr. Campbell, whom Ms. Campbell had designated as the beneficiary, would nullify Ms. Campbell's choice of beneficiary and frustrate the deliberate purpose of Congress. *Id.* at 659. That remains true "[w]hether directed at the very money received from the Government or an equivalent amount[.]" *Id.* at 659.

19

Moreover, like the SGLIA and FEGLIA, FERSA sets forth an unmistakable "order of precedence" for how benefits are to be paid, and the statutory scheme grants top priority to the TSP account holder's named beneficiary while at the same time barring recovery "by any other individual[.]" 5 U.S.C.A. § 8424(d). If we permitted the Estate to proceed with its lawsuit, we would be directing "that the proceeds actually 'belong' to someone other than the named beneficiary by creating a cause of action for their recovery by a third party." *Hillman*, 569 U.S. at 494. That is, we would be displacing the beneficiary selected by Ms. Campbell and placing someone else in his stead. *Id.*

Indeed, FERSA, like FEGLIA, recognizes that divorce proceedings subsequent to a beneficiary designation may affect an employee's desires regarding how TSP proceeds should be disbursed upon his or her death. That recognition is exemplified in FERSA's narrow exception to its order of precedence that permits payment of funds according to a divorce (or similar) decree. 5 U.S.C.A. § 8433(e)(1). But like FEGLIA, FERSA requires that the decree be received by the appropriate authority within a certain time. And, as discussed, it does not appear that Ms. Campbell or the Estate ever notified the appropriate authority about the Settlement Agreement in accordance with FERSA. 5 U.S.C.A. § 8435(c). Allowing the Estate to proceed with its claims under those circumstances would transform FERSA's narrow exception "into a general license for state law to override [FERSA]." *Hillman*, 569 U.S. at 496.

Finally, like NSLIA and SGLIA, FERSA contains a strict "anti-attachment" provision that prohibits TSP funds from being "subject to execution, levy, attachment, garnishment, or other legal process." 5 U.S.C.A. § 8437(e)(2). Subjecting the TSP funds

20

to "legal process" by way of the Estate's lawsuit would violate the anti-attachment provision and would "fail[] to give effect to the unqualified sweep of the federal statute." *Ridgway*, 454 U.S. at 61. Like the Supreme Court in *Ridgway*, we can find nothing in FERSA to indicate "that Congress intended to exempt claims based on property settlement agreements from the strong language of the anti-attachment provision." *Id.*

In sum, *Wissner*, *Ridgway*, and *Hillman* demonstrate the shear breadth of Congress's authority in governing the allocation of death benefits and in insulating those benefits from legal process. Those cases make clear that, when a statutory scheme bestows upon an individual complete freedom to choose a beneficiary and demands that death benefits be paid, first and foremost, to that beneficiary, Congress has exhibited the unmistakable intent that those death benefits belong to the beneficiary and no one else. Moreover, *Wissner* and *Ridgway* make clear that, when a statutory scheme includes an "anti-attachment" provision regarding death benefits, those benefits are not subject to attack, even in situations where the funds have already been distributed to the beneficiary. *See, e.g., Ridgway*, 454 U.S. at 60-61 (holding that the creation of a constructive trust after the proceeds had been received by the beneficiary would violate SGLIA's anti-attachment provision); *Wissner*, 338 U.S. at 658-59 (holding that NSLIA's anti-attachment provision precluded a California court from allowing a widow to recover, under state law, one-half of the amount of an insurance policy that had already been paid to the beneficiary). Consequently, the Estate's attempt to recover the TSP funds from Mr. Campbell by way of a state action was preempted by federal law, and the Estate's lawsuit should have been dismissed.

21

*IV. The Estate's Arguments*

The Estate argues that our decision should be guided by *Andochick v. Byrd*, *supra*. In that case, as noted, the Fourth Circuit held that a post-distribution lawsuit regarding funds distributed to a beneficiary under ERISA, a federal statutory scheme that governs retirement plans offered by private employers, was permissible based on the beneficiary's prior waiver of those funds via a marital settlement agreement. *Andochick*, 709 F.3d at 297.

We are not convinced that *Andochick* is applicable here. Although FERSA and ERISA have some similarities, they differ in two very important respects. First, ERISA does not include a statutory order of precedence, which perhaps explains why the Fourth Circuit did not discuss *Wissner*, *Ridgway*, or *Hillman* in reaching its decision in *Andochick*. Second, while ERISA does contain an "anti-alienation" provision, that provision differs markedly from FERSA's "anti-attachment" provision. Under ERISA, a pension plan offered by a private employer "shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C.A. § 1056(d)(1). That language is nowhere near as sweeping as the language used in FERSA, as FERSA not only prohibits funds from being "assigned or alienated[,]" but also prohibits funds from being "subject to execution, levy, attachment, garnishment, or other legal process." 5 U.S.C.A. § 8437(e)(2). That additional "anti-attachment" language distinguishes ERISA from FERSA and brings FERSA within the ambit of the Supreme Court's controlling precedent, as set forth in *Wissner* and *Ridgway*.

22

The Estate argues that FERSA's anti-attachment provision exists solely to simplify administration while a TSP is undistributed. We disagree. As noted, both *Wissner* and *Ridgway* involved, at least in part, state law claims regarding funds that had already been distributed. In each of those cases, the Supreme Court held that the federal statute's anti-attachment provision barred those funds from being attacked via legal process.

The Estate likewise argues that FERSA's beneficiary designation rules have no impact on post-distribution agreements and exist solely for administrative convenience while a TSP is undistributed. Again, we disagree. In *Hillman*, the Supreme Court expressly recognized, and rejected, a similar argument. *Hillman*, 569 U.S. at 491. There, the petitioner, Hillman, argued that Congress's purpose in enacting FEGLIA was to advance "administrative convenience" and that, consequently, there was no conflict between FEGLIA and Section D of the Virginia statute because Section D took effect only after benefits had been paid and would not impact the distribution of insurance proceeds. *Id.* The Supreme Court went on to hold that Section D interfered with FEGLIA, not because it violated any administrative convenience inherent in the statute's order of precedence, but because "it directs that the proceeds actually 'belong' to someone other than the named beneficiary[.]" *Id.* at 494. The Court added, in no uncertain terms, that it made no difference whether the conflicting state law required a pre-distribution transfer of proceeds or created a cause of action that enabled "another person to receive the proceeds *upon filing an action in state court*." *Id.* (emphasis added). Clearly, under *Hillman*, where a statutory scheme includes an order of precedence akin to the one in FEGLIA, which FERSA does, any funds distributed pursuant to that order of precedent "belong" to the

23

recipient and are not recoverable in a state court action, regardless of when the proceeds are distributed.

The Estate argues, in the alternative, that insulating the TSP funds from attack in the manner championed by Mr. Campbell is "nonsensical" because, if followed to its logical end, a recipient of TSP funds would be prohibited from ever assigning, gifting, or otherwise paying any portion of the TSP proceeds. We do not consider the breadth of our holding to be so sweeping. The sole question here is whether FERSA preempts a breach of contract (or similar) state law claim that seeks to recover properly distributed TSP funds based on the allegation that the funds should have been distributed to someone else under the terms of a settlement agreement that was never submitted to the appropriate agency, as required by FERSA. In that limited context, the state law claim is preempted by federal law.

To be sure, we recognize the general presumption against preemption in the family law context, as well as the benefit to public policy in requiring an individual who has seemingly waived his right to TSP funds to honor that agreement. But where, as here, a state action clearly conflicts with a federal statute, the state action "must give way[.]" *Hillman*, 569 U.S. at 491 (quotation marks and citation omitted). And, as the Supreme Court explained in *Hillman*, when a statutory scheme like FERSA evinces Congress's intent to empower an employee to select a beneficiary and ensure that the proceeds actually belong to that beneficiary, we, as the reviewing court, are not permitted to "draw an inference about an employee's probable intent from a range of sources[.]" *Id.* at 495. Rather, we are bound by the employee's beneficiary designation and the express

24

requirement that any proceeds due to the beneficiary "belong to the named beneficiary and no other." *Ridgway*, 454 U.S. at 55 (quotation marks and citation omitted). More to the point, FERSA provides a strict and unmistakable process by which an individual can change a beneficiary, either directly or by court order, and Ms. Campbell failed to abide by that process, choosing instead, for whatever reason, to retain Mr. Campbell as the sole beneficiary of her TSP account. Were we to permit the Estate to proceed with its post-distribution claim to the TSP proceeds under the facts presented here, we would be interfering with Ms. Campbell's wishes, as objectively expressed in her beneficiary designation, and Congress's clear mandate, as set forth in FERSA.[4]

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.**

---

[4] The dissenting opinion asserts that our analysis unduly "stretches" the preemption doctrine. However, we believe our conclusions are firmly supported by decisions of the United States Supreme Court, as well as the only federal appellate case directly on point. To reach the result the dissent seeks would unduly shrink the preemption doctrine.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 490

September Term, 2022

---

IN THE MATTER OF BRENDA
BATCHELOR

---

Nazarian,
Albright,
Zarnoch, Robert A.
  (Senior Judge, Specially Assigned),

JJ.

---

Dissenting Opinion by Nazarian, J.

---

Filed: February 28, 2024

When Michael Campbell and his ex-wife, Bonnie, divorced, Mr. Campbell disclaimed any right, title, or interest in her Thrift Savings Plan ("TSP") proceeds. There can be no serious dispute on this point. Their divorce Settlement Agreement, which was incorporated into the eventual divorce judgment, included a comprehensive mutual waiver by both parties, in any capacity—including, in so many words, as a beneficiary or named beneficiary—of each other's retirement assets—including, in so many words, Federal Thrift Savings Plans:

> Except for the rights to which either party may be entitled pursuant to the Social Security Act as a result of having been married to the other party and except as otherwise provided in this Agreement, **each party hereby expressly waives any legal or equitable right he or she may now have or may hereafter acquire pursuant to any Federal or state law or pursuant to any written document or otherwise, as a spouse, or former spouse**, or person with an insurable interest, or otherwise, to participate as a 'spouse' or 'former spouse' or 'alternate payee' **or as a 'named beneficiary' or as a beneficiary by reason of one's status as a 'spouse' or 'heir' or 'next of kin' or otherwise, in or pursuant to the other party's** pension plans, profit sharing plans, retirement annuity plans, survivor annuity plans, alternate annuity plans, deferred compensation plans, HR-10 plans, IRAs, SEP-IRAs, SIMPLE IRAs, 401(k) plans, 403(b) plans, severance pay plans, early retirement subsidy plans, **Federal Thrift Savings Plans**, Tax Deferred Savings Plans, Civil Service Retirement System retirement annuity and survivor annuity plans, Federal Employees Retirement System retirement annuity and survivor annuity plans, individual and group life insurance plans, and any and all other similar plans, programs, or accounts, including, but not limited to, the right to receive any benefit whether in the form of a lump-sum distribution, or a lump-sum death benefit, or a single and/or joint survivor annuity, or a pre-retirement survivor annuity, or otherwise or any plan which is subject to the provisions of the Employee Retirement Income Security Act of 1975 and/or the Retirement Equity Act. **All of**

> **the foregoing plans and accounts are hereafter collectively referred to as 'pension and retirement plans.'**

Settlement Agreement, § 7.C.8 (emphasis added).

The Agreement did provide for some re-distribution of *other* retirement assets, but made no exception at all for Ms. Campbell's TSP. And the Agreement went on to require each of them, in the event that the other failed to change their beneficiary designation, to disclaim any rights to the other's pensions or assign the proceeds to the other's estate or pay the proceeds over to the other's estate:

> For the purpose of implementing the provisions of this Paragraph above: (i) **If a party has failed to, or is for any reason unable to, change the beneficiary of his or her 'pension and retirement plan'** or the beneficiary of any death benefits payable by his or her 'pension and retirement plans'; or, (ii) If a party files an election subsequent to the date of execution of this Agreement but such election is for any reason deemed to be ineffective and 'pension and retirement plan' payments or death benefits are, in fact, paid or payable to the surviving party contrary to the intention of the parties as expressed in this Agreement; or, (iii) If a party fails to designate a beneficiary of any 'pension and retirement plans' and such 'pension and retirement plans' provide for payments to the 'spouse' or 'former spouse' of the decedent/plan participant, then in any of such events **the surviving party shall, at the direction and at the sole discretion of the decedent's personal representative, either: (A) disclaim in writing any entitlement to any benefits received or receivable from such 'pension and retirement plans'; or (B) assign all rights to receive such 'pension and retirement plan' benefits to the estate of the deceased party or to the person designated by the decedent or by the decedent's personal representative to receive such benefits; or (C) pay the net after-tax benefits of such 'pension and retirement plans' over to the estate of the deceased party or to the**

2

> **person designated by the decedent or the decedent's personal representative**.

*Id*. at § 7.C.11 (emphasis added).

Ms. Campbell died without changing the beneficiary of her TSP plan to her Estate or to someone other than Mr. Campbell. That was her mistake. But the Agreement anticipated this possibility. As part of their divorce bargain, Mr. Campbell had committed to disclaiming any right to Ms. Campbell's TSP proceeds, to assigning the benefits to Ms. Campbell's Estate, or to paying the net proceeds to the Estate. Seems straightforward enough.

Except Mr. Campbell took none of those three paths. Instead, with the full knowledge that he had relinquished his right to the TSP proceeds, he filed a claim with the Federal Retirement Thrift Investment Board (the "Board") and collected the full proceeds as her beneficiary. In filing that claim, of course, he lied by omission. Yes, Ms. Campbell had failed to change her beneficiary designation to remove him, as she should have. But if Mr. Campbell had told the Board the truth—if he had filed their divorce judgment and revealed that he had disclaimed his interest in the proceeds—the Board would not have paid him. *See* 5 U.S.C. § 8435(c). He left out that detail knowingly and collected more than $730,000 that he had agreed not to claim or keep, especially after he had gotten the full benefit of his divorce bargain. Under any other circumstances, his actions might well be called fraud, perhaps even theft.[1]

---

[1] Indeed, people who lie on applications to withdraw their *own* money from their federally regulated retirement accounts can face federal perjury charges. *See, e.g.*, *United States v. Mosby*, No. 22-CR-00007-LKG (D. Md., verdict entered Nov. 9, 2023).

The Estate sued Mr. Campbell to recover the proceeds, and after rejecting Mr. Campbell's preemption arguments, the Circuit Court for Montgomery County granted summary judgment on the Estate's breach of contract claim and, after filings on pre-judgment interest and attorneys' fees, entered judgment in the Estate's favor. Mr. Campbell asks us to reverse that judgment. His ability to keep the money turns entirely on whether the preemptive effect of federal law, specifically the Federal Employees' Retirement System Act of 1986 ("FERSA"), overwhelms the otherwise slam-dunk claims of Ms. Campbell's Estate to recover the proceeds from him.

To be sure, federal preemption is a powerful force. But as the majority notes, none of the federal cases on which their opinion relies controls the outcome of this question. And where, as here, the federal-law-driven payment was completed without interference, I disagree that federal law has any preemptive interest in that money afterward. It would be one thing if the Estate were suing TSP to prevent it from paying Mr. Campbell—I agree that the payment transaction indisputably would be driven by federal law and that Ms. Campbell's failure to change her beneficiary form left the Board no choice (under the misleadingly incomplete submission Mr. Campbell made) but to pay him. But this case involves only claims by the Estate against Mr. Campbell personally and seeks only to recover the funds under the Agreement and other state law theories. And once Mr. Campbell received the money, there remained no lingering federal interest in those proceeds. I would affirm the judgment of the circuit court.

4

# I.

The majority has the core legal premise right. Conflict preemption applies when a "challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Arizona v. United States*, 567 U.S. 387, 399 (2012) (*quoting Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). We presume, though, that Congress did *not* intend to preempt state law. *Chateau Foghorn LP v. Horford*, 455 Md. 462, 487 (2017). And a state law "must do major damage to clear and substantial *federal* interests before the Supremacy Clause will demand that state law be overridden." *Hillman v. Maretta*, 569 U.S. 483, 490–91 (2013) (emphasis added) (cleaned up). I part company with my colleagues in the way we understand the federal interest, and thus the scope of the federal preemption, in the context of this case.

"Marriage, divorce, and the division of marital property are quintessentially matters of state law, and pension or retirement benefits normally are considered marital property at the time of divorce." *Hurt v. Jones-Hurt*, 233 Md. App. 610, 619 (2017). Federal law intrudes only when federal law creates or regulates individual elements of a divorce proceeding—child custody questions involving Native American children, for example, *see Haaland v. Brakeen*, 599 U.S. 255, 276–77 (2023), or property interests created by federal law, *see Hurt*, 233 Md. App. at 619–30 (military retirement and disability benefits). In this case, Ms. Campbell was a federal employee who contributed money to her TSP, a plan created by FERSA, *see* 5 U.S.C. §§ 8432 and 8472, and administered and regulated by the Board. *See* 5 C.F.R. §§ 1600.1 *et seq*. So although the Campbells' divorce

proceeding, and specifically their property distribution, was governed generally by Maryland state law, federal law governs the distribution of Ms. Campbell's TSP proceeds.

The question, though, is how far that federal overlay stretches. Obviously, the mechanics of creating, managing, and paying out the proceeds of Ms. Campbell's TSP are governed by federal law. The majority recounts correctly the individual regulations governing her right to designate a beneficiary, the impact of that designation, the process of changing it, and the process by which the Board pays out those proceeds upon separation from federal employment or death. *See* Slip Op. at 7–8. And, importantly, FERSA provides that "sums *in* the Thrift Savings Plan may not be assigned or alienated and are not subject to execution, levy, attachment, garnishment, or other legal process." 5 U.S.C. § 8437(e)(2) (emphasis added).

The key word there is "in." Once the money has been paid out—in this case, by the Board to Mr. Campbell after he filed his (misleading) application—federal law should not play any ongoing role in regulating those funds, especially *against* the Estate of the federal employee who contributed them.

The majority and federal courts interpreting other federal laws governing employee benefits plans make a great deal of the fact that FERSA defines an "order of precedence" for paying out TSP proceeds that "bars recovery by any other individual." 5 U.S.C. § 8424(d). And again, that makes sense through the point when the Board has paid out the proceeds, in this case to Mr. Campbell. Why, though, does the fact that payment followed this process mean that the fungible money now in Mr. Campbell's possession is immune from post-payment state law claims by the Estate? The majority acknowledges that there

6

is no controlling precedent on this question, but points to cases interpreting other similar federal statutory regimes and finds an intent on the part of Congress to bar recovery even after distribution. And although some of those cases do in fact bar post-distribution claims arising under state law, doing so here, where Ms. Campbell was the federal employee whose interests FERSA was meant to protect, rewards Mr. Campbell, who obtained the proceeds of her TSP through deception (at best), at her sole expense.

The majority relies on four cases—*Wissner v. Wissner*, 338 U.S. 655 (1950) (an insurance policy created pursuant to federal law), *Ridgway v. Ridgway*, 454 U.S. 46 (1981) (same), *Hillman v. Maretta*, 569 U.S. 483 (2013) (a life insurance policy pursuant to the Federal Employees' Group Life Insurance Act ("FEGLIA")), and *Evans v. Diamond*, 957 F.3d 1098 (10th Cir. 2020) (a TSP account)—and distinguishes a Fourth Circuit case, *Andochick v. Byrd*, 709 F.3d 296 (4th Cir. 2013) (an ERISA plan). Although these cases arise under different federal laws, those laws all have at their core the purpose of protecting the interests and stated instructions of the policy- or plan-holder. In all of these cases, the challenging party sought to compel payment of the proceeds at issue to someone other than the named beneficiary. In three of them, the circumstances varied in ways that cut against stretching preemption to kill the Estate's claims here:

- In *Wissner*, the challenger (the employee's estranged wife) sought to attach the monthly insurance payments that were going to his beneficiary (his mother), and the Supreme Court held that the anti-attachment provision exempted the payments from attachment or levy or seizure by creditors. 338 U.S. at 658–60. There, though, the challenger was attempting to assert California's community

7

property law, which operated if at all against her ex-husband, not his mother. Under those circumstances, then, the federal interest is carrying out the employee's intent.

- Same with *Ridgway*: that case involved the same type of insurance policy and a state law claim asserted by the servicemember's first wife (who was not the beneficiary) against his second (who indisputably was). 454 U.S. at 52–62. There too, the employee had made his intentions known and the court protected them. *Id.*

- In *Hillman*, the insurance policy involved a lump-sum payment that went to the employee's first wife, after he failed, as here, to make his second wife his beneficiary. 569 U.S. at 489–96. But *Hillman* involved a Virginia state law that sought automatically to transfer the employee's stated interest (his beneficiary designation) to someone else—*that* statute was preempted, but that case says nothing about the availability of state law claims against those (fungible) proceeds *after* the payment was made. *Id.* In other words, the Court wouldn't allow state law to interfere with the federal transfer process and stayed silent on the question of whether a second wife would have a state law claim to those proceeds against the first.

Then there's *Evans*, a FERSA case that is closest factually to this one. 957 F.3d at 1098. As in this case, the federal employee and his ex-wife divorced and their decree stated that she had no interest in his TSP. *Id.* at 1099. And as in this case, he died without changing his beneficiary. *Id.* When the ex-wife declined to waive her interest in the proceeds, the

8

employee's estate filed a declaratory judgment action that was removed to federal court. *Id.* The ex-wife won in the trial court and the Tenth Circuit affirmed, holding not only that *Hillman* compelled the Board to distribute the proceeds to her, but also that any order compelling her to hold the money in constructive trust or otherwise to grant any relief to the estate would frustrate Congressional intent: "Because any relief obtained by the Estate under Utah law would interfere with the express federal interest of ensuring that . . . the properly designated beneficiary . . . retain the entirety of the distribution she receives, the Estate's post-distribution claims are preempted." 957 F.3d at 1105. This case is indistinguishable factually from ours. The latter part of the holding, though, and the part that matters most in this case, is supported by no authority and it goes too far. It cannot be the case that FERSA's anti-attachment clause transfers the money free and clear of all claims by any creditor ever. The point is to make sure that the federally designated beneficiary receives the money, and there isn't any federal interest in what happens after (and the court doesn't identify any).

It sweeps far too broadly to say baldly that FERSA (or any of these federal statutes) preempts post-distribution claims. Again, money is fungible. Once the proceeds of Ms. Campbell's TSP landed in Mr. Campbell's hands (or bank account), he was free to spend it on whatever he liked. But it cannot be that those funds, by virtue of their TSP provenance, are insulated forever from claims Mr. Campbell's creditors might have against him.

What if, for example, Mr. Campbell had an outstanding judgment against him: would a bank account with $730,000 in it be exempt from execution by *his* creditors because he got the money (the dubious pretenses notwithstanding) from his ex-wife's TSP?

9

That can't be right. The federal interest in TSPs lies in protecting and carrying out the interests of the plan participant, in ensuring that the money is distributed from the plan itself to the beneficiary defined by federal law. It is one thing to require that that payment transfer those funds free and clear of claims, but another entirely to say that the mere fact of that payment preempts any state law claim against Mr. Campbell that might or might not be satisfied with those particular funds. And if one says, "Well, the preemption only applies to claims by Ms. Campbell's Estate," the result is even more absurd: federal law designed to protect and carry out the intentions of plan participants works in this case to *thwart* the interest of the plan beneficiary, and only her, in favor of the interests of the thwarter.

And that's where *Andochick v. Byrd* comes in. 709 F.3d at 296. To be sure, *Andochick* involves a private retirement plan subject to the Employee Retirement Income Security Act ("ERISA"), not a federal employee and a federally managed insurance, retirement, or savings plan. *Id.* at 297. That difference explains the absence of the "order of precedence" provisions and other mechanical requirements that are handled in ERISA plans by the (federally regulated) plan documents. But the core legal principles are the same. On the one hand, federal law requires employee benefit plans to specify payout procedures and directs plan administrators to follow them, and ERISA preempts state laws that conflict or interfere with those directives. *Id.* at 299 (*citing* 29 U.S.C. § 1102(a)(1) and (b)(4) and *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009)). On the other hand, ERISA doesn't preempt post-distribution claims to enforce state law waivers: "For in situations like that at issue here, *Kennedy* merely dictates that the plan

10

administrator distribute plan benefits to the named beneficiary . . . [and] [f]or the same reason[s], post-distribution suits do not expose the plan administrator to double liability— only the named beneficiary has any claim against the plan administrator." *Id*. As a result, the Fourth Circuit affirmed an order directing that the ex-husband who had disclaimed his interest in his deceased ex-wife's ERISA plan proceeds would receive the funds from the plan administrator and then pay them over to her estate, as their divorce decree required. *Id*. at 298–301. That's exactly what should happen here.

The differences between FERSA and ERISA don't support a different preemption analysis; to the extent that the Tenth Circuit thought otherwise in *Evans*, it erred and we're not bound by it. The Board discharged its obligations under federal law when it paid the proceeds of Ms. Campbell's TSP to her designated beneficiary, and at that point the federal interest in that money ended. From there, federal law has no interest in how the Campbells implement their divorce judgment. To preempt the Estate's post-distribution claims in this case turns the saver-protective logic of FERSA entirely on its head, and I decline the invitation to stretch preemption that far in this case.

## II.

Although the circuit court rejected the Estate's claims for specific performance and conversion, it granted summary judgment to the Estate on Count 2, its claim for breach of contract. Mr. Campbell does not challenge the court's analysis on the merits of the state law claims, nor the court's decision to award pre-judgment interest and attorneys' fees, nor the amount awarded in the judgment. And because he put his appellate eggs entirely in the

11

preemption basket, I would affirm the judgment of the circuit court and, with respect, dissent from my colleagues' judgment to the contrary.